[No. 15308-4-II.   Division Two.   August 19, 1993.]

SAVE OUR STATE PARK, ET AL, *Respondents,* v. MARY HORDYK, ET AL, *Appellants.*

*David Bruneau, Prosecuting Attorney,* and *Christopher Melly, Deputy,* for appellants.

*Craig A. Ritchie* and *Doherty, Doherty & Ritchie,* for respondents.

ALEXANDER, C.J. — The Clallam County Auditor, Mary Hordyk, appeals a Clallam County Superior Court order granting Save Our State Park (S.O.S. Park) a writ of mandamus compelling the auditor to register the group's initiative petition. The initiative, if approved by a majority of voters, would require Clallam County, among other things, to acquire property for a park. In support of her argument that the trial court erred in granting the writ, the auditor contends that (1) the county code requires her to insure that initiative petitions are in proper form before registering them; and (2) S.O.S. Park's petition was not in proper form because the code prohibits initiatives that adopt a capital program. We affirm the Superior Court.

During the summer of 1991, S.O.S. Park filed an initiative petition with Clallam County Auditor, Mary Hordyk. The petition read as follows:

AN ORDINANCE to conserve and protect publicly owned park-quality lands.

SECTION 1. Definition. For purposes of this initiative, "state owned park-quality lands" means all state owned lands which the Legislature has identified since 1984, or which is hereafter identified for possible transfer to the State Parks and Recreation Commission pursuant to negotiations between the Commission and the Department of Natural Resources.

SECTION 2. The County is directed to make every effort to persuade and encourage acquisition by the State Parks and Recreation agency of state owned, park-quality lands. The County shall also discourage by all lawful means the conversion of such lands to other than park uses.

SECTION 3. New Section. A new section is added to Ordinance No. 176, as amended, Title 33 of Clallam County Zoning Code as follows:

Section 33.39.015. The PLANNED RECREATIONAL COMMUNITY zone shall not apply to any state owned park-quality lands even if these are subsequently transferred to another ownership.

SECTION 4. The County shall adopt and submit to the Inter-Agency Committee for Outdoor Recreation an amendment to the Clallam County Five Year Parks and Recreation Master Plan, to provide the planning basis for acquisition by the County, of state-owned, legislatively-identified, park-quality lands in Clallam County.

SECTION 5. If any lands in Clallam County, on Miller Peninsula ("Diamond Point"), identified in House Bill 1616 in 1988, are proposed for sale or transfer by the board of natural resources for other than public park purposes, the County Commissioners shall exercise their authority pursuant to RCW 76.12.072 and reclaim these lands for county park purposes.

SECTION 6. Should the expenditure of public funds come to pass for the lands referred to in Section 5, above, these will be covered by a new revenue source to be provided through entry user fees into the affected park and any offered donations.

SECTION 7. If any part of this Ordinance is held to be invalid or unconstitutional, the validity of the remaining portions of this initiative will not be affected. It is hereby expressly declared that this initiative and each part thereof would have been adopted irrespective of the fact that any one or other parts are declared invalid or unconstitutional.

As required by the Clallam County Code (CCC),[1] the auditor checked S.O.S. Park's petition to determine whether it

---

[1]The Clallam County Code sets out the initiative process as follows. Sponsors first present an initiative petition to the county auditor. CCC 37.01.010. The auditor then registers the petition if it is in proper form, or if it is not in proper

was in "proper form to be registered". CCC 37.01.020. To assist her in making this determination, Hordyk provided a copy of the petition to the Clallam County Prosecuting Attorney. A deputy prosecutor advised the auditor that the petition was not in proper form because section 5 of the proposed initiative violated the county code in that it would, if adopted, establish a "capital program".[2] The deputy prosecutor relied on CCC 37.01.160, which provides:

> C.C.C. 37.01.160. Limitations on Initiative.
>   (1) No initiative petition requiring the expenditure of additional funds for an existing activity or of any funds for a new activity or purpose shall be filed or submitted to a vote unless provisions are specifically made therein for new or additional sources of revenue which may thereby be required.
>   (2) No initiative petition shall be filed or submitted to a vote which provides for the compensation or working conditions of County employees, authorizes or repeals taxes, appropriates money, adopts the annual budget or capital program, redistricts the County Commissioner Districts, or passes an emergency ordinance.

Clallam County's Home Rule Charter § 8.20 contains similar prohibitions.[3]

---

form, gives a detailed explanation of its defects. CCC 37.01.020. The auditor then sends the petition to the prosecutor who formulates a question expressing the purpose of the measure and develops a legislative title. CCC 37.01.030. The auditor then returns the petition to its sponsors who have 90 days to collect the requisite number of signatures. CCC 37.01.100. The petitions used by the sponsors to gather signatures must meet specific form requirements as to paper size, margins, paper quality, etc. CCC 37.01.070-.080. After receiving the signed petitions, the auditor verifies the authenticity of the signatures and transmits the petition to the Board of County Commissioners. CCC 37.01.110. The Board then accepts or rejects the petition. CCC 37.01.120. Should the Board not adopt the petition, it sets an election date. CCC 37.01.120(2). If a majority of voters approve of the initiative, it becomes law. CCC 37.01.130.

[2]Regarding the petition draft, the deputy prosecutor wrote to the auditor that "the acquisition of *any* land for public park purposes constitutes a capital program and thus runs afoul of CCC 37.01.160(2)."

[3]Section 8.20 provides:
  "The first power reserved to the people is the initiative. Any ordinance or amendment to an ordinance may be proposed to the commissioners by the people by filing with the Auditor an initiative petition. Provided, that no ordinance shall be initiated providing for the compensation or working conditions of county

In July 1991, the auditor returned the petition to S.O.S. Park and advised the organization that its initiative petition provided for a capital program and, therefore, was not in compliance with CCC 37.01.160(2).[4] S.O.S. Park then sought a writ of mandamus from the Clallam County Superior Court to compel the auditor to register the initiative petition.

The Superior Court granted S.O.S. Park's writ and ordered registration of the initiative petition. The trial court concluded that although the auditor was authorized to reject petitions which were not in the proper form, "whether the initiative violates the Charter and Code by possibly requiring a 'capital program' is not a matter of form."

Hordyk registered the initiative, but appealed to this court contending that the Superior Court erred in ordering her to register the initiative petition. She also sought a remand to the Superior Court for a determination of what constitutes a "capital program". In the meantime, S.O.S. Park circulated petitions and submitted the signed petitions to the auditor. Seeking to save certification and election costs, the auditor declined to count the signatures or certify the petitions. The petitions remain uncounted in the auditor's vault.

We first address the question of whether this case is moot. Although neither party briefed that issue, counsel for both parties conceded during oral argument that this case may be moot. In response to our questions, counsel for Clallam County explained that the State Legislature appropriated money to fund acquisition of land on Miller Peninsula from a corporation that originally planned to develop a resort at that location. Thus, section 5 of the initiative petition, the provision that the auditor believed established a capital program, is no longer needed to protect the land on Miller Peninsula.

---

employees, authorizing and repealing of taxes, appropriating money, adopting the annual budget or capital program, redistricting the county commissioner districts, or passing an emergency ordinance."

[4]In her letter, the auditor erroneously cited CCC 37.01.060(2) as the provision the initiative violated. CCC 37.01.060 addresses the appeal procedure and has no subsection (2).

■ Generally, where the substantial question in a case is moot, an appeal will be dismissed. *Purchase v. Meyer*, 108 Wn.2d 220, 230, 737 P.2d 661 (1987); *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972); *Washam v. Pierce Cy. Democratic Cent. Comm.*, 69 Wn. App. 453, 457, 849 P.2d 1229 (1993). However, when matters of continuing and substantial public interest remain, a court may exercise its discretion and decide an appeal. *Purchase*, 108 Wn.2d at 230; *Sorenson*, 80 Wn.2d at 558; *Washam*, 69 Wn. App. at 458. The criteria a court should apply when deciding to review a moot case are whether: (1) the nature of the question is public rather than private; (2) the decision will offer guidance to public officials; and (3) the question is likely to recur. *Purchase*, 108 Wn.2d at 230; *Sorenson*, 80 Wn.2d at 558.

We agree with counsel that this case is probably moot. The portion of the initiative petition that purported to authorize a capital program was contained in section 5, which was directed toward protecting land on Miller Peninsula that was threatened with development. These lands are now to be acquired by the public and preserved as a park. Nevertheless, we decide to review the case because we find the question of whether the auditor may refuse to register an initiative petition based upon its subject matter meets the criteria outlined above. The issue, in our judgment, is one that affects the public and a ruling will offer guidance with respect to the registration of future initiatives. Furthermore, the issue is likely to recur.[5]

■ We turn now to the issue at hand. In 1912, the citizens of this state amended our constitution to give the people the right to initiate laws. Const. art. 2, § 1(a) (amend. 72); *State ex rel. Mullen v. Howell*, 107 Wash. 167, 168, 181 P. 920 (1919). They passed the amendment "because they had become impressed with a profound conviction that the legislature had ceased to be responsive to the popular will."

---

[5]Counsel for the County represented during oral argument that seven initiatives had been filed in Clallam County in this year alone.

*State ex rel. Mullen*, 107 Wash. at 172.[6] Several years later, the Supreme Court waxed eloquently on the importance of initiatives and referendums:

> The people have a right to adopt any system of government they see fit to adopt. In its workings, it may not meet their expectations; it may be unwieldy and cumbersome; it may tend to inconvenience and prodigality; it may be the expression of a passion or sentiment rather than of sound reason; but it is the people's government and, until changed by them, must be observed by the legislature and protected by the courts.

*State ex rel. Brislawn v. Meath*, 84 Wash. 302, 320, 147 P. 11 (1915). The court later called the right of initiative and referendum, "the first of all the sovereign rights of the citizen — the right to speak ultimately and finally in matters of political concern . . .." *State ex rel. Mullen*, 107 Wash. at 171. More recently, the court has reminded governing bodies that the right of initiative is a fundamental constitutional right, *Schrempp v. Munro*, 116 Wn.2d 929, 932, 809 P.2d 1381 (1991); *Vangor v. Munro*, 115 Wn.2d 536, 541, 798 P.2d 1151 (1990) (citing *Sudduth v. Chapman*, 88 Wn.2d 247, 251, 558 P.2d 806, 559 P.2d 1351 (1977)).

---

[6]Years later, the State Supreme Court chided the Legislature for what it perceived was an attempt to thwart the people's constitutional right of referendum. (The referendum, the "second power reserved by the people" is analogous to the initiative in that referendum petitions may be filed against measures passed by the Legislature, except those passed as emergency legislation or for support of state government. Const. art. 2, § 1(b) (amend. 72). The initiatives, the "first power reserved by the people" is a process by which laws may be originated by the people and then submitted to the electorate for a vote. Const. art. 2, § 1(a) (amend. 72).) Presumably to escape public scrutiny and the referendum process, the Legislature had begun to insert "emergency clauses" in a number of bills. In *State ex rel. Kennedy v. Reeves*, 22 Wn.2d 677, 683-84, 157 P.2d 721 (1945), the court wrote:

> With all due respect, and with the earnest desire not to seem either censorious or facetious, we feel that we must say frankly and in all seriousness that the custom of attaching emergency clauses to all sorts of bills, many of which cannot by any stretch of the imagination be regarded as actually emergent . . . has become so general as to make it appear, in the light of recent experience, that a number of [formerly established presumptions indulged in favor of legislative declarations of emergencies] can no longer be deemed controlling. It, of course, will never be presumed that the legislature deliberately intended to infringe upon a constitutional right.

When the people of Clallam County adopted their home rule charter they also reserved as the first power of the people of Clallam County, the right of initiative. Clallam Cy. Home Rule Charter, art. 8, § 8.20. We assume they did so because they wished to avoid the difficulties that Washington's citizens experienced at an earlier time with the Legislature. Therefore, keeping in mind the importance of the right of the people to govern themselves through initiative, we conclude that Auditor Hordyk did not have the authority to refuse to register this initiative petition. We reach this decision not only because we wish to defer to the people and their right of initiative, but because basic rules of statutory construction so require.

Courts should construe the words of an ordinance to protect the fundamental right of the people to initiate and not allow the right to be "hampered by either technical statutory provisions or construction." *State ex rel. Case v. Superior Court*, 81 Wash. 623, 632, 143 P. 461 (1914). Additionally, courts should accord terms their most "plain and ordinary meaning" when interpreting a statute. *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 479-80, 745 P.2d 1295 (1987); *In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986).

The Clallam County Code defines the auditor's duties in the initiative process. The auditor, according to that code, must determine whether an initiative petition submitted to him or her is in "proper form". CCC 37.01.020(1). If it is not, the auditor is to give a detailed explanation of the petition's defects and return it to petitioners. CCC 37.01.020(1).

The code clearly does not provide that the auditor is to determine whether an initiative petition addresses subjects restricted by CCC 37.01.160, such as adoption of a capital program. Had the drafters of the code and charter desired the auditor to undertake such an important task, they would have so provided. They chose, instead, to authorize the auditor to determine only whether an initiative is in "proper form".

The term "proper form" cannot be construed to mean "proper substance". Black's Law Dictionary 586 (5th ed. 1979) provides the following definition of "form":

> In contradistinction to "substance," "form" means the legal or technical manner or order to be observed in legal instruments or judicial proceedings, or in the construction of legal documents or processes. Antithesis of "substance."

In our judgment, the ordinary meaning of the word "form" does not give the auditor authority to determine whether an initiative meets the substantive requirements outlined in the county code.

While we are sympathetic to the position that public funds should not be expended needlessly to place an initiative that violates the county code on the ballot, we have not been provided sufficient evidence that, at this early stage of registration, any more than a nominal amount of public moneys would be spent to prepare the petition for circulation. Although we have no doubt that greater amounts of public money would have to be expended when an initiative is put on the ballot,[7] such amounts need be expended only if the petitioners successfully inspire their fellow citizens to support the proposed initiative by signing the petitions. The time for determining whether an initiative might violate the code should not come any earlier than after signature validation.

Yet even after signature validation, we have grave doubts as to whether it is appropriate for the county auditor to make such a significant decision. A decision not to register a petition because of its substance may severely limit the people's power and their fundamental right to initiate. A court of law, exercising judicial review, is the more appropriate entity to make such determinations.

However, it is worth noting that courts frequently refrain from inquiring into the validity of a proposed law, including an initiative, prior to its enactment. *Seattle Bldg. & Constr. Trades Coun. v. Seattle*, 94 Wn.2d 740, 745, 620 P.2d

---

[7] The deputy prosecutor stated at oral argument that $25,000 to $30,000 is required to put an initiative on the ballot.

82 (1980) (citing *State ex rel. O'Connell v. Kramer*, 73 Wn.2d 85, 436 P.2d 786 (1968); *State ex rel. Griffiths v. Superior Court*, 92 Wash. 44, 159 P. 101 (1916)). Yet courts have intervened where a proposed law is beyond the scope of initiative power. *Seattle Bldg. & Constr. Trades Coun.*, 94 Wn.2d at 746 (citing *Leonard v. Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976); *Ruano v. Spellman*, 81 Wn.2d 820, 505 P.2d 447 (1973); *State ex rel. Guthrie v. Richland*, 80 Wn.2d 382, 494 P.2d 990 (1972); *Ford v. Logan*, 79 Wn.2d 147, 483 P.2d 1247 (1971); *State ex rel. Haas v. Pomeroy*, 50 Wn.2d 23, 308 P.2d 684 (1957); (others out of state)); *see* Trautman, *Initiative and Referendum in Washington: A Survey*, 49 Wash. L. Rev. 55, 78 (Nov. 1973-Aug. 1974). Courts have also specifically determined that election officers, such as the Secretary of State or a county prosecuting attorney, may not refuse to file a petition based upon its subject matter. *Ballasiotes v. Gardner*, 97 Wn.2d 191, 195, 642 P.2d 397 (1982) (prosecutor "overstepped the boundaries of his authority" by refusing to place an initiative on the ballot); *State ex rel. O'Connell*, 73 Wn.2d at 86-88 (Secretary of State could not thwart legislative process because duties were "largely mechanical in nature").

The right of the people to initiate laws is fundamental. When a public official attempts, albeit with good intentions, to thwart an effort to initiate, such a decision must be carefully scrutinized. We find the decision by Clallam County's auditor to refuse to register S.O.S. Park's petition comports with neither the spirit nor the letter of the Clallam County Charter or Code.

We affirm the Superior Court's determination that the auditor may not refuse to register S.O.S. Park's petition. We decline the auditor's request to remand the case for a determination as to what constitutes a "capital program" because, as we have held, this case is moot.

Affirmed.

SEINFELD, J., and GREEN, J. Pro Tem., concur.