[No. 67908-2-I. Division One. February 19, 2013.]

TIM EYMAN, *Appellant*, v. MICHELLE MCGEHEE, *as City Clerk*, *Respondent*.

*Daniel F. Quick* (of *Daniel Quick PLLC*), for appellant.

*James E. Haney* and *Kristin N. Eick* (of *Ogden Murphy Wallace PLLC*), for respondent.

¶1 Cox, J. — A city clerk has a mandatory duty under the statutes governing the filing of initiative petitions to transmit such petitions to the county auditor for determination of sufficiency.[1] But, a court may review the substance of an initiative petition to determine whether it is valid.[2] Such a

---

[1] *See* RCW 35A.01.040(4); RCW 35A.29.170.

[2] *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 714, 911 P.2d 389 (1996).

determination is "exclusively a judicial function."[3] Despite a city clerk's mandatory duty, however, a court may decline to grant a writ of mandamus if it determines that ordering compliance is a useless act because an initiative is invalid.[4]

¶2 Here, the city clerk failed to transmit to the county auditor a filed initiative petition, as the governing statutes mandate, without first obtaining a judicial determination of the validity of the initiative. Upon the commencement of this action by a sponsor of the initiative, the superior court properly determined that the initiative is invalid and mandamus would not lie. We affirm.

¶3 The material facts are not in dispute. In September 2010, the city of Redmond (City or Redmond) adopted an ordinance establishing a system of automated traffic safety cameras, consistent with RCW 46.63.170. This statute authorizes municipalities to use automatic traffic safety cameras and to issue consequent notices of traffic infractions.

¶4 In March 2011, the Redmond mayor and city council received a letter notifying them that a group of town citizens were collecting signatures to put an initiative on the ballot. The initiative was designed to challenge the automated traffic safety camera system.

¶5 On September 6, 2011, this court decided *American Traffic Solutions, Inc. v. City of Bellingham*.[5] That case held that an initiative regarding automated traffic cameras was invalid and exceeded the scope of the initiative power.[6]

¶6 On September 14, the initiative sponsors turned in 6,050 voter signatures in support of the Redmond initiative, Proposition 1. They later contacted the City to ask when the

[3] *Id.*

[4] *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 602-03, 229 P.3d 774 (2010) (quoting *State ex rel. City of Tacoma v. Rogers*, 32 Wn.2d 729, 733, 203 P.2d 325 (1949); *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 765, 903 P.2d 953 (1995)).

[5] 163 Wn. App. 427, 260 P.3d 245 (2011), *review denied*, 173 Wn.2d 1029 (2012).

[6] *Id.* at 434.

proposed initiative would be transmitted to the county auditor. They learned that the city clerk had decided, presumably on the advice of counsel, not to transmit the petition to the county auditor.[7]

¶7 This action against Michelle McGehee, in her capacity as the Redmond clerk, followed. A proponent of the initiative sought a writ of mandamus requiring McGehee to transmit the initiative to the county auditor.

¶8 After a hearing on October 11, 2011 on an order to show cause, the superior court entered an order denying the request for relief. The court gave an oral decision and entered an order that mandamus would not lie.

¶9 This appeal by a proponent of the initiative and cross appeal by the city clerk followed.

## MOOTNESS

¶10 A threshold issue that neither party addresses is whether this case is now moot. Because the November 2011 election has passed, effective relief may no longer be provided by the courts. But the questions here deal with issues that are of continuing and substantial public interest. Accordingly, we reach the merits.

¶11 "Generally, where the substantial question in a case is moot, an appeal will be dismissed. However, when matters of continuing and substantial public interest remain, a court may exercise its discretion and decide an appeal."[8]

¶12 Here, one question is the extent of a county clerk's duty to transmit an initiative petition to the county auditor. Another is whether a clerk may usurp the exclusive

---

[7] Appellant's Opening Brief at 1-2; Brief of Respondent-Cross Appellant at 8.

[8] *Save Our State Park v. Hordyk*, 71 Wn. App. 84, 89, 856 P.2d 734 (1993) (citations omitted) (citing *Purchase v. Meyer*, 108 Wn.2d 220, 230, 737 P.2d 661 (1987); *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972); *Washam v. Pierce County Democratic Cent. Comm.*, 69 Wn. App. 453, 457-58, 849 P.2d 1229 (1993)).

judicial function of determining whether an initiative is valid. These are both issues of substantial and continuing public interest. As in *Philadelphia II v. Gregoire*,[9] which dealt with the duty of the attorney general to certify a statewide initiative, these issues are of a public nature. Thus, it is "desirable to provide guidance [to municipalities] for future actions."[10]

## CLERK'S CLEAR LEGAL DUTY

¶13 McGehee, the Redmond city clerk, argues that she did not have a duty to transmit Proposition 1 to the county auditor. We hold that in her role as the city clerk, McGehee had a clear legal duty to transmit the initiative petition to the county auditor.

¶14 "The primary goal of statutory construction is to carry out legislative intent."[11] If statutory language is clear on its face, that plain meaning must be given effect.[12] Courts should generally "accord terms their most 'plain and ordinary meaning' when interpreting a statute."[13] Thus, when a statute contains the word "shall," courts have typically interpreted this as a mandated duty.[14] A trial court's interpretation of a statute is a question of law this court reviews de novo.[15]

¶15 In *Philadelphia II*, the supreme court examined whether the attorney general of Washington could refuse to prepare a ballot title and summary for a proposed initia-

---

[9] 128 Wn.2d 707, 911 P.2d 389 (1996).

[10] *Id.* at 712.

[11] *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

[12] *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004).

[13] *Save Our State Park*, 71 Wn. App. at 91 (quoting *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 479-80, 745 P.2d 1295 (1987)).

[14] *Philadelphia II*, 128 Wn.2d at 713 ("The statutory term 'shall' is presumptively imperative unless a contrary legislative intent is apparent.").

[15] *Locke v. City of Seattle*, 133 Wn. App. 696, 704, 137 P.3d 52 (2006).

tive.[16] The supreme court analyzed the following statutory language: " 'Within seven calendar days after the receipt of an initiative or referendum measure the attorney general *shall* formulate and transmit to the secretary of state the concise statement.' "[17] It held that this language *required* the attorney general to prepare the ballot title and summary. "Use of the term 'shall' by the Legislature indicates that the Attorney General *must* prepare a ballot title and a summary *regardless* of the contents of the initiative. The statutory term 'shall' is presumptively imperative unless a contrary legislative intent is apparent."[18]

¶16 The court held that reviewing the substance of a proposed initiative is exclusively a judicial function, not a role for other governmental actors.[19] In so holding, the court rejected the attorney general's argument that "if an initiative exceeds the scope of initiative power, it is not an initiative at all," and the attorney general may consequently refuse to prepare the ballot title and summary.[20] "It is true that a *court* may review the substance of a proposed initiative to determine whether it exceeds the scope of initiative power described in Article II, Section 1 of the Washington State Constitution."[21] But, the court continued, "[W]e hold that courts, not the Attorney General, should determine whether a proposed initiative exceeds the power reserved to the people in article II, section 1 of the state constitution."[22] As the court noted:

> This does not leave the Attorney General without recourse to prevent an initiative from reaching the ballot. If the Attorney

---

[16] *Philadelphia II*, 128 Wn.2d at 712-13.

[17] *Id.* (quoting RCW 29.79.040).

[18] *Id.* at 713 (emphasis added).

[19] *Id.* at 714-15.

[20] *Id.* at 714.

[21] *Id.*

[22] *Id.* at 714-15.

General believes an initiative exceeds the scope of the initiative power, she should prepare the ballot title and summary in accordance with her statutory duty *and then* seek an injunction to prevent the measure from being placed on the ballot.[23]

¶17 As in *Philadelphia II*, RCW 35A.01.040 and RCW 35A.29.170 both require the Redmond city clerk to take specific actions when an initiative is submitted. RCW 35A.29.170 states that "[t]he clerk shall transmit the petition to the county auditor who shall determine the sufficiency of the petition under the rules set forth in RCW 35A.01.040." RCW 35A.01.040 mandates that "[w]ithin three working days after the filing of a petition, the officer with whom the petition is filed shall transmit the petition to the county auditor for petitions signed by registered voters, or to the county assessor for petitions signed by property owners for determination of sufficiency."[24] Thus, both statutes in question, like that in *Philadelphia II*, mandate that the city clerk transmit the petition to the county auditor. There is nothing ambiguous about the use of the words "*shall* transmit the petition" in the statutes.[25]

¶18 Here, Redmond's initiative process, like all cities that have adopted the optional municipal code, follows RCW 35A.29.170 and 35A.01.040. By failing to transmit the petition, McGehee failed to comply with her mandatory legal duty.

¶19 McGehee argues that because the statutory scheme here is different from that in *Philadelphia II*, the supreme court's holding there is inapplicable. This argument has no merit.

¶20 All statutes in question here contain the same word: "shall."[26] Thus, they create a clear and nondiscretionary duty for the clerk to transmit the initiative once received.

---

[23] *Id.* at 715-16 (emphasis added).

[24] RCW 35.21.005(4).

[25] RCW 35A.29.170 (emphasis added); RCW 35A.01.040 (emphasis added).

[26] RCW 35A.29.170; RCW 35A.01.040.

■ ■ ¶21 McGehee also argues that because the proposed initiative was clearly beyond the initiative powers stated in Title 35A RCW after this court's holding in *American Traffic Solutions*, it was not " 'authorized to be filed.' "[27] This, too, is an argument without merit. *Philadelphia II* makes clear that the determination of the validity of an initiative is "exclusively a judicial function."[28] There, the supreme court noted that the requirement that the attorney general prepare a ballot title and summary did "not leave [her] without recourse to prevent an initiative from reaching the ballot."[29] She could comply with her statutorily mandated duties and "then seek an injunction to prevent the measure from being placed on the ballot."[30]

¶22 Similarly, here, McGehee was statutorily required to transmit the petition to the county auditor.[31] Nothing prevented her from bringing a court challenge, an action that would have permitted a court to exercise its exclusive judicial function of determining the validity of the initiative.

¶23 Indeed, the trial court correctly acknowledged that McGehee lacked the authority to refuse to transmit the petition. In its oral decision, the court stated:

> There is no authority for the city's position that the clerk had the right [not] to transmit the petition to the county auditor. As pointed out in [*Philadelphia II*], ***even the Attorney General, the highest lawyer in the state,*** is not allowed to make a legal determination when addressing a statewide initiative.[32]

¶24 If the attorney general had no authority to usurp the exclusive judicial function of determining the validity of the initiative, it follows that the city clerk of Redmond lacked

---

[27] Brief of Respondent-Cross Appellant at 32-33 (quoting RCW 35A.29.170).

[28] *Philadelphia II*, 128 Wn.2d at 714.

[29] *Id.* at 715.

[30] *Id.* at 716.

[31] *See* RCW 35A.01.040.

[32] Report of Proceedings (Oct. 11, 2011) at 33 (emphasis added).

such authority. As the trial court stated, the clerk's decision was necessarily an assumption of a judicial function. "To make the decision she did, the clerk had to apply case law and interpret legislation as it relates to the facts at hand. This is a judicial function and is not a city clerk function."[33]

¶25 In arguing that she did not have a duty to transmit the petition in question, McGehee focuses on a particular portion of RCW 35A.29.170: "Initiative and referendum petitions *authorized to be filed* under provisions of this title, or authorized by charter, or authorized for code cities having the commission form of government . . . ."[34] McGehee argues that the initiative here was not "authorized to be filed." Thus, she contends, she was not mandated to transmit it to the county auditor. But neither RCW 35A.29.170 nor 35A.01.040 provides that it is within the clerk's function to interpret whether a proposed initiative is "authorized" or not. As we have discussed earlier in this opinion, the supreme court has explicitly stated that interpretation of an initiative's validity is exclusively a judicial function.[35] The only duty required of the clerk by RCW 35A.29.170 is that the clerk "*shall* transmit the petition to the county auditor who shall determine the sufficiency of the petition *under the rules set forth in RCW 35A.01.040.*"[36]

¶26 Division Two's opinion in *Save Our State Park v. Hordyk* supports this conclusion.[37] There, the county code required the auditor to "determine whether an initiative petition submitted to him or her [was] in 'proper form'."[38] The court concluded that this language did *not* allow the

---

[33] *Id.*

[34] (Emphasis added.)

[35] *See Philadelphia II*, 128 Wn.2d at 714.

[36] (Emphasis added.)

[37] 71 Wn. App. 84, 856 P.2d 734 (1993).

[38] *Id.* at 91.

auditor to determine the legality of an initiative petition.[39] The court explained:

> The term "proper form" cannot be construed to mean "proper substance". Black's Law Dictionary . . . provides the following definition of "form":
>
> "In contradistinction to 'substance,' 'form' means the legal or technical manner or order to be observed in legal instruments or judicial proceedings, or in the construction of legal documents or processes. Antithesis of 'substance.' "[40]

¶27 McGehee argues that *Save Our State Park* is distinguishable from this case. There, she contends, the county employee in question decided to stop the initiative process after engaging in legal interpretation. In contrast, McGehee claims, she merely engaged in "subject review." But, applying the holding of *American Traffic Solutions* to a proposed initiative is not mere "subject review." Nor is it authorized by statute. After verifying that there were sufficient signatures and that the form of the proposed initiative was proper, McGehee's statutory duty was to forward the petition to the county auditor.

## MANDAMUS

¶28 The separate question is whether the trial court properly denied the requested writ, ruling it was a vain and useless act. The proponent of the initiative argues that this was error. We disagree.

¶29 A writ of mandamus is an extraordinary remedy.[41] It is appropriate "to compel the performance of an act which the law especially enjoins as a duty resulting from an office . . . ."[42] But, even when appropriate, "[m]andamus

---

[39] *Id.* at 91-92.

[40] *Id.* at 92 (quoting BLACK'S LAW DICTIONARY (5th ed. 1979)).

[41] *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994).

[42] RCW 7.16.160.

does not lie to compel the doing of a vain and useless thing."[43] Whether there is a clear duty owed under a particular statute that would require the issuance of a writ is a question of law that an appellate court reviews de novo.[44]

¶30 When examining an initiative whose subject is clearly outside that allowed by the initiative power, Washington courts have declined to issue a writ.[45] This is despite the fact that the courts have also recognized that the state actor owed a clear duty to process the proposed initiative.[46]

¶31 In *Philadelphia II*, though the supreme court held that the attorney general did not have discretion to refuse to prepare a ballot title and summary for a proposed initiative, it also held that mandamus was improper as the proposal was beyond the scope of the initiative power.[47] The court stated:

> In conclusion, the Attorney General should have prepared the ballot title and summary and then sought to enjoin its placement on the ballot. *Nevertheless*, because we determine that the initiative is beyond the scope of Washington's initiative power, *we decline to direct the Attorney General to do so in this case*.[48]

¶32 Here, as in *Philadelphia II*, McGehee had a duty to transmit Proposition 1 to the county auditor. But this court's decision in *American Traffic Solutions* and the

---

[43] *State ex rel. Close v. Meehan*, 49 Wn.2d 426, 432, 302 P.2d 194 (1956); *Vashon Island Comm. for Self-Gov't*, 127 Wn.2d at 765 ("Courts should . . . refrain from requiring the performance of useless or vain acts.").

[44] *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001).

[45] *See Philadelphia II*, 128 Wn.2d at 720; *see also Vashon Island Comm. for Self-Gov't*, 127 Wn.2d at 772-73.

[46] *See Philadelphia II*, 128 Wn.2d at 714-15.

[47] *Id.* at 712-13, 720.

[48] *Id.* at 720 (emphasis added).

supreme court's decision in *Mukilteo Citizens for Simple Government v. City of Mukilteo*[49] stood as authority for the conclusion that Proposition 1 was improper and beyond the scope of the initiative power. Thus, as the superior court correctly decided in this case, a writ would not lie because the transmission of the initiative would have been a useless act under both of these cases.

¶33 In *American Traffic Solutions*, this court held that the proposed initiative in that case was beyond the scope of the initiative power.[50] It noted that the legislature had previously passed RCW 46.63.170, which authorizes the use of automated traffic safety cameras, so long as the appropriate local legislative authority first enacts an ordinance allowing for their use.[51] " 'An initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself.' "[52] Thus, this court held, "Initiative No. 2011-01 expressly restricts [the legislature's] authority by [expressly] conditioning its use on a concurrence by the majority of the voters. The subject matter of the initiative is therefore clearly beyond the scope of the local initiative power [and] is invalid."[53]

¶34 More recently, in *Mukilteo Citizens*, the supreme court confirmed the analysis of this court in *American Traffic Solutions*.[54] It held that the proposed initiative

attempted to expressly restrict the authority of Mukilteo's legislative body to enact red light cameras by requiring a two-thirds vote of the electorate for approval and by limiting the amount of traffic fines. Because automated traffic safety

---

[49] 174 Wn.2d 41, 272 P.3d 227 (2012).

[50] *Am. Traffic Solutions*, 163 Wn. App. at 433-34.

[51] Former RCW 46.63.170 (2009).

[52] *Am. Traffic Solutions*, 163 Wn. App. at 433 (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006)).

[53] *Id.* at 434.

[54] *Mukilteo Citizens*, 174 Wn.2d at 52-53.

cameras are not a proper subject for local initiative power, Proposition 1 is invalid because it is beyond the initiative power.[55]

¶35 Like the proposed initiatives in *American Traffic Solutions* and *Mukilteo Citizens,* the initiative here would have required that the use of automated ticketing cameras be approved by both the Redmond City Council *and* the public. It also would have limited the fines that could have been imposed. Proposed Redmond Proposition 1 read as follows:

BE IT ENACTED BY THE PEOPLE OF THE CITY OF REDMOND:

Section 1. A new section is hereby added to the Redmond Municipal Code to read as follows:

10.25.100 Automatic Ticketing Cameras: The City of Redmond and for-profit companies contracted by the City of Redmond may not install or use automatic ticketing cameras to impose fines from camera surveillance unless such a system is approved by a majority vote of the City Council and a majority vote of the people at an election.

. . . .

10.25.110 Fines: if a majority of the City Council and a majority of Redmond voters at an election approve a system of automatic ticketing cameras to impose fines from camera surveillance, the fine for infractions committed shall be a monetary penalty of no more than the least expensive parking ticket imposed by law enforcement in the city limits of Redmond.

Section 2. Sections 10.25.010-10.25.090 of the Redmond Municipal Code and Ordinance #2542AM and #2576 are hereby repealed.

Section 3. Removal: all automatic ticketing cameras, as defined by Section 1 of this measure, installed or in use in the city limits of Redmond as of the date of passage of this measure must be removed no later than the effective date of this

---

[55] *Id.* at 52.

measure unless such cameras are approved by voters at an election.

Section 4. Severability: If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or application of the provision to other persons or circumstances is not affected.[56]

¶36 As McGehee notes, the wording of Redmond Proposition 1 is very similar to the Bellingham initiative at issue in *American Traffic Solutions*. The only difference is that there, the Bellingham initiative provided that the automatic ticketing cameras were to be removed "no later than 30 days following the effective date" of the passage of the proposition.[57] Further, Proposition 1 is also similar to the initiative the supreme court struck down in *Mukilteo Citizens*.[58]

¶37 Thus, like the initiatives in those cases, Redmond Proposition 1 is beyond the scope of the initiative power. Accordingly, the issuance of a writ would have been improper as a vain and useless act.

¶38 The initiative proponent makes a number of arguments that he raises for the first time on appeal. Because he fails to demonstrate how these arguments are "manifest" or of a truly constitutional dimension as required by RAP 2.5(a)(3), we decline to consider them.

¶39 "The general rule is that appellate courts will not consider issues raised for the first time on appeal."[59] An appellant seeking review under RAP 2.5(a)(3) must demonstrate that the error is "manifest" and truly of constitutional dimension.[60] "Stated another way, the appellant must 'identify a constitutional error and show how the

---

[56] Clerk's Papers at 31.

[57] *Id.* at 61.

[58] *Mukilteo Citizens*, 174 Wn.2d at 47.

[59] *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (citing RAP 2.5(a)).

[60] *Id.*; *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

alleged error actually affected the [appellant]'s rights at trial.' "[61] As the supreme court has noted, however,

> RAP 2.5(a)(3) was not designed to allow parties "a means for obtaining new trials whenever they can 'identify a constitutional issue not litigated below.' " If the record from the trial court is insufficient to determine the merits of the constitutional claim, then the claimed error is not manifest and review is not warranted.[62]

¶40 First, the initiative proponent argues that mandamus would not be a vain and useless act because allowing the initiative to be transmitted to the county auditor would "have extensive political effects" and would allow an advisory vote. Though he conceded at oral argument that he did not make this contention at the trial court level, his appellate briefing fails to address why this is an error that is manifest and involving a constitutional right as required by RAP 2.5(a)(3). Consequently, we do not consider it.

¶41 The initiative proponent also argues that Proposition 1 is a "valid expression of political speech." Again, he fails to explain why we should address this argument for the first time on appeal. Thus, we need not address this contention, either.

¶42 Finally, the initiative proponent argues that "allowing the City to stop Redmond [Proposition] 1 before the signature-counting phase will cause irreparable harm to this initiative and to the . . . initiative process as a whole."[63] But, he cites no authority to support this argument. Consequently, we can assume that he has found none.[64] Gen-

---

[61] *O'Hara*, 167 Wn.2d at 98 (alteration in original) (quoting *Kirkman*, 159 Wn.2d at 926-27).

[62] *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999) (citations omitted) (quoting *State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988) (quoting *State v. Valladares*, 31 Wn. App. 63, 76, 639 P.2d 813 (1982))).

[63] Appellant's Opening Brief at 15-17.

[64] *King County Dep't of Adult & Juvenile Det. v. Parmelee*, 162 Wn. App. 337, 354, 254 P.3d 927 (2011), *review denied*, 175 Wn.2d 1006 (2012).

erally, we will not review an issue absent reasoned argument and citation to legal authority.[65] Thus, we need not address this argument.

¶43 We affirm the order denying the motion for order to show cause.

VERELLEN, J., concurs.

¶44 DWYER, J. (concurring and dissenting) — I agree with the majority that the determination of the legal validity of an initiative is exclusively a judicial function and that executive branch officers have no business stiff-arming the voters of a city by petulantly refusing to comply with their lawful obligation to process a submitted initiative. I also agree with the majority that, based on the issues briefed to us, appellant has not stated an argument meriting appellate relief. In particular, the initiative statute at issue does not mandate advisory ballots. However, although not argued to us, a plain reading of the statute at issue discloses that the proper, lawful processing of this proposed initiative would not have been a useless act. I dissent from the majority's contrary conclusion.

¶45 The optional municipal code gives the citizens of a city two powers. Upon the collection of a sufficient number of signatures of city voters, the proponents of an initiative may (1) present it to the city council for the council to exercise its legislative authority and adopt the proposed ordinance "as is" and (2) if the city council declines to do so, have the proposed ordinance placed on a general election ballot for an "up or down" vote by the city's voters. Thus, the citizens are given both the right to *propose* legislation and the right to *enact* legislation.

¶46 Here, the majority correctly notes that controlling case law establishes that the traffic camera ordinance at

---

[65] *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

issue is not subject to direct democracy. It cannot be placed on a ballot because the state legislature has reserved to the city council—not to the city's voters—the right to make decisions in this field of governance. *See Mukilteo Citizens for Simple Government v. City of Mukilteo*, 174 Wn.2d 41, 272 P.3d 227 (2012); *Am. Traffic Solutions, Inc. v. City of Bellingham*, 163 Wn. App. 427, 260 P.3d 245 (2011), *review denied*, 173 Wn.2d 1029 (2012). I have no quarrel with the majority's deference to this authority.

¶47 But what does this mean? It means that the city council *can* legislate in this area. The city council can—*legally*—adopt "as is" the ordinance proposed in the initiative. This would be perfectly proper. However, the wrongful acts of the Redmond city clerk deprived both the voters and their elected city council of this opportunity.

¶48 This case is different from the situation in *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 911 P.2d 389 (1996). As described:

> The Philadelphia II initiative seeks to establish in the United States "direct democracy" by means of a federal, nationwide initiative process to complement the current congressional system, and ultimately to call a world meeting where representatives from participating countries will discuss global issues.

*Philadelphia II*, 128 Wn.2d at 710. "[T]he initiative process is limited to acts that are legislative in nature." *Philadelphia II*, 128 Wn.2d at 718. A proposed initiative must also "be within the authority of the jurisdiction passing the measure." *Philadelphia II*, 128 Wn.2d at 719. The initiative at issue in *Philadelphia II* "goes beyond the scope of Washington State initiative power as it attempts to exercise authority that goes beyond the jurisdiction of the state." 128 Wn.2d at 719 ("The fundamental and overriding purpose of Philadelphia II is to create a federal initiative process."). Thus, the *Philadelphia II* initiative sought to enact a law that the state legislature was without power to enact. As the

state legislature could not enact the proposed law, neither could the voters.

¶49 But *here* the Redmond City Council *can* choose to adopt Eyman's initiative "as is." The initiative is "legislative in nature" and is "within the authority" of the city council to adopt. *Philadelphia II*, 128 Wn.2d at 718, 719.

¶50 "Petitions containing the required number of signatures shall be accepted as prima facie valid until their invalidity has been proved." RCW 35A.01.040(5). To label Eyman's initiative as being "invalid" is to make an overbroad statement. The initiative petition was valid for presentment to the Redmond City Council. Had the city council chosen not to adopt the ordinance proposed in the initiative, the matter could not be properly put on the ballot. This is true. But that does not change the fact that the *first* right granted by the initiative power is the power to propose legislation. And it does not change the fact that the proposed legislation could have been lawfully adopted "as is" by the city council.

¶51 Redmond's executive branch wrongfully and illegally came between its voters and their city council. It would not have been a "useless act" for the superior court judge to have granted the writ of mandamus, forcing the Redmond city clerk to behave lawfully and transmit the petition for signature verification.