# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ANGELA MARIE VOS, | No. 58557-0-II |
| Appellant, | |
| v. | |
| BOBBY JOE KNIGHT, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, J. – Angela Vos appeals the trial court's entry of a July 2023 parenting plan regarding her children, formally known as CK[1] and HK, and the children's father, Bobby Knight. The July 2023 parenting plan modified a November 2022 parenting plan, which was entered following a trial on Vos's motion for a major modification of a 2017 parenting plan.

The 2022 parenting plan designated Knight as the sole decision-maker regarding the children's education and health care, but gave each parent equal residential time as long as they both resided in the same school district. As a result of Vos's actions, the July 2023 parenting plan limited Vos's time with her children to one supervised visit every other weekend.

Vos challenges the July 2023 parenting plan on various grounds.[2] We hold that the trial court did not abuse its discretion when it entered the 2023 parenting plan and that Vos has not

---

[1] The record reflects that CK now prefers to be called by a different name. We will refer to them in this opinion as CK to maintain continuity with the record. No disrespect is intended.

[2] Vos's briefing addresses both the November 2022 and July 2023 parenting plans. However, a commissioner of this court limited the scope of the appeal to the 2023 parenting plan and

provided any basis for reversing that parenting plan. Accordingly, we affirm the trial court's entry of the 2023 parenting plan.

FACTS

Vos and Knight are the parents of CK and HK. HK was born in 2007, and CK was born in 2009. Vos and Knight have engaged in extensive litigation related to their relationship and custody of CK and HK since as early as July 2009. The record reflects the filing of voluminous pleadings over the years, many of them from Vos.

Apparently, a parenting plan was entered sometime before 2017 in which the children resided a majority of the time with Vos. In August 2017, the Thurston County trial court approved Knight's petition for a major modification of the previously entered parenting plan and entered a new parenting plan. The modification was based in part on the court's findings that Vos's household was "detrimental to the children's mental and emotional health" and Vos had "engaged in conduct that is detrimental to the health and welfare of the children." Ex. 27, at 3. The court made extensive findings regarding Vos's disruptive conduct regarding the children's schools, their medical providers, and Knight, including a finding that Vos engaged in abusive use of conflict with Knight and with personnel at CK and HK's schools.

The parenting plan changed the parent with whom the children resided most of the time from Vos to Knight. The children would reside with Knight, except they would reside with Vos from Thursday after school to return to school on Monday if Vos remained in Thurston County. If Vos and Knight lived in the same school district, the parties would share time with the children, a week on and a week off. The parenting plan also limited Vos's authority to make

---

dismissed the appeal of the 2022 parenting plan because Vos's appeal of the 2022 parenting plan was untimely.

decisions for CK and HK, giving Knight sole authority to make decisions about the children's education, medical care, and dental care.

*Facts Since 2017 Parenting Plan*

In October 2018, Vos filed a petition to modify the parenting plan. The trial court denied the petition for lack of adequate cause.

At some point, both Vos and Knight moved to Mason County. On September 2, 2020, Vos filed another motion in Mason County to change the 2017 parenting plan.

On September 17, 2020, the trial court entered a temporary order related to the 2017 parenting plan. The order provided that CK would reside with Vos, except that she would spend every other weekend with Knight. The residential schedule remained the same for HK.

On September 21, 2020, Vos filed an amended petition in Mason County to change the 2017 parenting plan, alleging that there had been a significant change in circumstances regarding Knight since 2017. Vos alleged that Knight "physically, mentally and emotionally abuses and neglects the children to get back at [her]," Clerk's Papers (CP) at 129, and made a number of specific allegations in which she claimed that Knight had engaged in conduct that was harmful to the children.

In October, the trial court issued an order finding adequate cause to hold a trial on the petition. The court also entered an order appointing a guardian ad litem (GAL) to investigate issues related to making a new parenting plan for the children.

The trial court subsequently entered findings of fact and conclusions of law regarding the adequate cause hearing. The court entered a finding that it was concerned for the health and well-being of HK and CK. The court also entered a finding that it had "concerns that there may

3

be parental alienation going both directions and that is why there needs to be a Parenting Investigator." CP at 392.

In April 2021, the GAL filed a confidential report regarding her investigation. The GAL stated, "[T]he main problem that seems to weave themselves throughout this investigation is abusive use of conflict by [M]iss Vos, mental health issues of Ms. Vos[,] and domestic violence by Mr. Knight. The psychological damage that is being done to [HK] and [CK] is astonishing and quite sad." CP at 484. The GAL stated that she was very concerned about the children, primarily because of Vos's abusive use of conflict.

In April, the trial court issued an order addressing multiple motions filed by Vos and the GAL's report. The court highlighted the GAL's statement about the psychological damage being done to the children. The court ruled that the September 17, 2020 temporary order would remain in effect and ordered Knight to enroll in the Wraparound Intensive Services (WISe) program.

In conclusion, the trial court stated,

> That since, in general, ongoing litigation is not in the best interest of children and the amount of litigation in this case is already voluminous, neither party will file additional pleadings or motions regarding placement of the children unless a child's life is in imminent danger. The amount of litigation in this case is not consistent with the children's best interest.

CP at 515.

*Bench Trial*

Starting in March 2022, the trial court held a bench trial on the modification of the 2017 parenting plan. The trial took place over 19 days over five months, and the parties submitted 173 exhibits. Vos, Knight, and the GAL testified at the trial. Vos – representing herself – questioned Knight, the GAL, and called four other witnesses. Knight did not call any witnesses.

Sometime in June, Vos moved from Mason County to Thurston County. She did not tell Knight or the court that she had moved, and she continued to exercise her rights with the children as if she still lived in Mason County.

*October 2022 Memorandum Decision*

On October 21, 2022, the trial court entered a memorandum decision after the bench trial. The court discussed in detail a number of issues that were raised at trial. The court concluded, "The children's present environment is detrimental to their physical, mental, and emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the children. The Court will modify the Final Parenting Plan." CP at 941.

On November 1, the trial court held an in camera interview with HK and CK to get their input about potential changes to the 2017 parenting plan. During the interview, the children did not tell the court that Vos had moved to Thurston County.

On November 3, Vos filed a form requesting that her address information be kept confidential from Knight. The address that she listed was in Thurston County. The same day, Vos filed a notice of address change. The notice stated that she agreed to accept legal papers at an address in Mason County.

*November 2022 Parenting Plan*

The trial court entered a new parenting plan on November 15, 2022. The trial court ruled that limitations should be placed on Vos under RCW 26.09.191 because she engages in the abusive use of conflict. Under the plan, Knight "has sole decision making for medical, dental and educational decisions of the children and [Vos] is precluded from having direct contact with

the medical and dental providers, or attending related appointments with the children, and has limited direct contact with educational providers." CP at 954.

Regarding parenting time, the plan stated, "Should Ms. Vos continue to reside in the same school district as Mr. Knight, the parties shall share time with the children week on and week off with exchanges on Monday after school." CP at 956. The plan provided that "[a]nyone with majority or substantially equal residential time (at least 45 percent) who wants to move with the children *must notify* every other person who has court-ordered time with the children." CP at 958 (emphasis in original).

The plan precluded Vos from making or attending medical or dental appointments for the children, including mental health appointments, regardless of the wishes of the children, except for WISe sessions that would take place at her home. The court ordered Knight and Vos to participate in the WISe program. The court incorporated its October 21 memorandum as findings of fact for the 2022 parenting plan.

The trial court scheduled a review hearing for later in 2023 to review the success of the 2022 parenting plan. The court also requested a supplemental GAL report to "address the success, or lack of success, of the implementation" of the 2022 parenting plan. CP at 964-65.

*Facts Since 2022 Parenting Plan*

In March 2023, the GAL filed a confidential report. In the report, the GAL stated that Vos told the GAL on September 7, 2022 that she had moved to Thurston County.

On March 22, Knight filed a motion for a temporary order for relocation to Thurston County. The motion pointed out that Vos already had moved to Thurston County.

On May 8, the GAL filed another confidential report. The GAL noted that in her previous report she expressed concern for the children because of Vos's abusive use of conflict.

6

She then stated, "This GAL is disheartened to conclude that over the last few years that this court action has transpired, nothing has changed. Ms. Vos continues to use abusive litigation and abusive use of conflict, . . . which is psychologically damaging to [HK] and [CK]." CP at 1526. However, the GAL also faulted both parents:

> [T]his GAL is afraid these parties are entrenched in their dysfunction. . . . They have consistently placed their own selfishness ahead of the wellbeing of their children. This writer does not believe there could ever be a parenting plan, no matter how eloquently fashioned, that will ever stop the level of unhealthy patterns that this family has founded.

CP at 1527.

The GAL recommended that the alternating week residential schedule in the parenting plan be continued. She also recommended that Vos's ability to be involved with the children's medical care and education continue to be limited.

*May 2023 Temporary Memorandum Opinion*

On May 24, the court entered a temporary memorandum opinion regarding various motions, including Vos's motion to hold Knight in contempt for moving to Thurston County and into a new school district without court approval. The court noted that the parenting plan adopted a week on, week off residential schedule if Vos and Knight lived in the same school district. However, Vos moved out of the school district even before the parenting plan was entered, yet she continued to share residential time as if she had not moved. The court acknowledged that, before Vos signed the parenting plan, she had filed a notice of address change. The court had understood the notice to mean that Vos had continued to live in Mason County. The court recognized that Vos had stated that she would accept service in Mason County, but that the form did not affirmatively say that Vos lived in Mason County. However,

7

the court noted that "ordinarily that type of notice would not indicate moving out of the district and the county." CP at 1326.

At a hearing, Vos argued that she had complied with the 2022 parenting plan because she was not the custodial parent and did not have to comply with relocation requirements of the 2017 order. The court stated,

> Even if true, in all candor toward the trier of fact it would have been proper for her to advise the court and all parties when she moved. It appears she was not being fully candid with the court and that she benefited from that lack of candor in that she was given 50/50 time with the children.

CP at 1326.

Considering all the facts and circumstances, the trial court declined to find Knight in contempt. Although Knight violated the court order by moving to Thurston County, the court found that he did not act in bad faith.

*June 2023 Hearing and Decision*

On June 7, the trial court held a hearing to address Knight's request for relocation and to review the implementation of the November 2022 parenting plan.

After the parties argued at length, the GAL made a statement. She said that this was the worst case of abusive use of conflict that she had seen in the 12 years she had worked as a GAL, having served over 700 families. The GAL stated that "[t]he amount of psychological damage being done to these children is shocking." Rep. of Proc. (RP) at 2119. She emphasized that "[HK] and [CK] are being stuck in the middle of this ongoing court battle, and it's terrible." RP at 2120.

The GAL continued,

> And the Court wanted me to focus mainly on whether the WISe protocol, which the Court had set up, was working. And the simple answer is no, and it's not working because Ms. Vos pulls the children out of any mental health services they

8

start, using the law that the children have the right to choose their mental health providers, using that as an excuse.

. . . .

I had written in my report that I don't think it'll work to go to where they don't have shared time with their – with both parents because I think that it may backfire because the children will end up being extremely angry at their dad. And I'm not saying Mr. Knight is an angel because he's not, but he's hard and rough and gruff and doesn't come off sometimes friendly.

But on the flipside, the amount of psychological abuse that's occurring in Ms. Vos' home may outweigh that – what they're experiencing in Mr. Knight's home. So I'm starting to lean towards maybe it's better because the [RCW 26.09.]191 limiting factors that there not be a shared residential, and that the children live primarily with Mr. Knight.

RP at 2120-21.

Vos urged the court to discount the GAL's report, stating that the GAL was inclined to paint her as the villain and suggesting that the GAL was biased. Knight agreed with the GAL. He explained that while he had argued for 50-50 residential time with the children between him and Vos during the bench trial, given Vos's relocation with the children and failure to follow the 2022 parenting plan he should have 100 percent residential time and Vos should be given one weekend each month with the children.

During the hearing, Vos confirmed that she had moved to from Mason County to Thurston County in June 2022.

On July 31, the trial court entered a memorandum decision. The court highlighted its finding in the 2022 parenting plan that a move with the children would only exacerbate the children's challenges.

The court stated, "Unbeknownst to Mr. Knight or the Court, Ms. Vos was involved in her own relocation plan, a plan that involved the children and that she kept secret during the trial and for several months following the trial." CP at 1400. The court stated that the focus of its entry

9

of the 2022 parenting plan following the trial was to mitigate Vos's destructive actions. The court explained that a significant reason for why it did not approve Knight's earlier proposed relocation was the concern that at that time the relocation could have jeopardized the success of the WISe program. The court stated that if it had known about Vos's relocation plans, it would have had a profound impact on the court's consideration of the issue.

The trial court concluded that Vos knew the impact her relocation to Thurston County would have on the court's consideration of the 2022 parenting plan because of Vos's omission of the information from the court during trial and in the timing of her filing of the notice of change of address. The court pointed out that Vos had exercised her visitation rights as if she still resided in the same school district as Knight. The court also emphasized that it had held an in camera review with the children on November 1, months after Vos had moved. The court noted that keeping Vos's move a secret from the court must have caused the children stress.

The trial court also expressed concern about Vos's inappropriate influence on the children's mental health decisions. The court stated that Vos's actions were why CK and HK had not made sufficient progress with WISe services. Based on discussions between the GAL and the children, the court noted that Vos continued to inappropriately influence the children's health care decisions. The court emphasized that this was contrary to the letter and intent of the 2022 parenting plan.

The court stated:

> Ms. Vos has been engaged in a process that is totally contrary to the Court's focus in the November 2023 [sic] orders. It is this court's opinion that regardless of any court order, Ms. Vos will continue to attempt to undermine the relationship between the children and Mr. Knight and will continue to control the children's mental health decisions, at least as long as she has the ability to do so. It is further this Court's opinion that there is no program, whether the WISe program or any other counseling program that could achieve the Court's goal of resolving the strained

relationship between the children and Mr. Knight as long as Ms. Vos is actively engaged in the children's daily lives.

Ms. Vos presented a significant amount of evidence related to issues that she had about Mr. Knight throughout the lengthy trial during 2022. Ultimately, the Court did not find such issues legitimate and was more concerned about Ms. Vos's mental stability and ongoing paranoia about Mr. Knight. The Court was and remains concerned that Ms. Vos's paranoia is a function of some sort of mental health disorder. However, Ms. Vos presented mental health assessments that determined that she had no diagnosable disorder. This is unfortunate because there is no identified therapy that could be utilized in order to resolve such concerns.

The Court considered the evidence presented during the trial and was seriously concerned about Ms. Vos's continued influence over the children. When the Court entered its decision following the trial, it considered a final Parenting Plan that further restricted Ms. Vos's contact with the children. However, the Court listened to Mr. Knight and his urging that the children would benefit from an alternating weekly schedule with Ms. Vos.

Given Ms. Vos's ongoing determination to erode the relationship between Mr. Knight and the children, her ongoing paranoia about Mr. Knight, her ongoing influence over the mental health decisions of the children, and her ongoing inability or unwillingness to abide by this Court's orders, the Court has now concluded that it is in the children's best interest to further limit contact between Ms. Vos and the children.

This limitation must go beyond a limitation in the amount of time Ms. Voss [sic] is allowed to be with the children. The limitation needs to include a supervisory element because it is clear to this court that any unrestricted contact between the children and Ms. Vos will only give her the opportunity to continue with her improper influence over them.

To this end, the Court is entering a new Final Parenting Plan. The new Final Parenting Plan will provide for the children to primarily reside with Mr. Knight and have only supervised contact with Ms. Vos.

CP at 1402-03.

The trial court also entered a temporary order approving Knight's move with the children to Thurston County.

11

*July 2023 Parenting Plan*

At the same time as the trial court entered its memorandum decision on July 31, the court entered a new parenting plan. The parenting plan placed limitations on Vos based on a finding that she "uses conflict in a way that may cause serious damage to the psychological development" of the children. CP at 1408. The parenting plan significantly limited Vos's contact with the children. It stated that Vos could see the children during professionally supervised visits every other weekend for three hours at a time. The court specified:

> Ms. Vos shall not discuss this matter and/or parenting issues with the children, either directly or through third parties. Ms. Vos shall not discuss this matter or parenting issues in the presence of the children or allow others to discuss this matter or parenting issues in the presence of the children. In addition, Ms. Vos shall not provide the children with any information that is related to any parenting issues. Ms. Vos is specifically precluded from commenting, allowing others to comment, or providing any information regarding healthcare and/or schooling of the children in such a manner that the children will likely become aware of the information. These restrictions relate to all direct contacts by Ms. Vos, or contacts through third parties. Should Ms. Vos violate this provision during a supervised visitation, then the supervisor shall terminate the visit at that moment and no future visitations shall occur until they are ordered by the Court.

CP at 1408.

The trial court ordered that only Knight can make major decisions about the children, including those related to education, health care, and dental care. The court adopted as additional findings its October 21, 2022 memorandum decision. The trial court did not reference its July 31, 2023 memorandum decision in the 2023 parenting plan's findings of fact.

Vos appeals the trial court's entry of the July 2023 parenting plan.

ANALYSIS

A.  LEGAL PRINCIPLES

RCW 26.09.260 governs modification of a parenting plan. Under RCW 26.09.260(1), the trial court may modify the existing parenting plan only if it "finds, upon the basis of facts that

12

have arisen since the prior decree or plan or that were unknown to the court at the time of the prior plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child."

RCW 26.09.260(2) provides that the trial court shall retain the residential schedule established by the parenting plan unless, among other things, "The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c).

In addition, "[t]he court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191." RCW 26.09.260(4). Under RCW 26.09.191(3), a court may limit any provisions of the parenting plan if one of several factors exists, including "[t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e).

We review the trial court's decision on modification of a parenting plan for an abuse of discretion. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202 (2010). A trial court abuses its discretion where its decision is manifestly unreasonable or based upon untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017).

B.    ASSIGNMENTS OF ERROR

Vos included 113 assignments of error in her brief. However, Vos failed to provide any argument at all or any meaningful argument for most of her assignments of error. In general, we

13

will not consider an issue when the appellant has not provided meaningful argument. *Wiklem v. City of Camas*, ___ Wn. App. 2d ___, 551 P.3d 1067, 1078 (2024). Accordingly, we decline to address many of Vos's assignments of error for lack of meaningful argument. Moreover, we decline to address assignments of error 11-78, because they relate to the November 2022 parenting plan, the appeal of which was dismissed by the court commissioner. Similarly, we decline to address many of Vos's arguments in her brief that relate only to the November 2022 parenting plan or matters arising before entry of that plan.

In assignment of error 113, Vos assigns error to "any and all findings, conclusions and statements, written or oral, which are substantially similar to the assignments of error above or relate to the assignments of error." Br. of Appellant at 30. However, RAP 10.3(a)(4) states that an appellant's brief must contain "[a] separate concise statement of each error a party contends was made by the trial court." And RAP 10.3(g) states, "A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." Assignment of error 113 violates these rules and is not specific enough to allow review.

C.     CHALLENGES TO 2023 PARENTING PLAN

1.     RCW 26.09.260(1) Findings

As noted above, a trial court can modify a parenting plan only if the court finds, based on new or previously unknown facts, that there has been a substantial change of circumstances of the child or the nonmoving party and that modification is in the best interest of the children. RCW 26.09.260(1). Vos argues that in entering the July 2023 parenting plan, the trial court failed to make the necessary findings to support a modification. We disagree.

The trial court did not make specific RCW 26.09.260(1) findings regarding a change in circumstances in the July 2023 parenting plan. However, at the same time the court entered the parenting plan it also entered a memorandum decision explaining the reasons for modifying the November 2022 parenting plan. The memorandum contains sufficient findings to support a modification. Even though the memorandum decision was not expressly referenced in the 2023 parenting plan, because they were entered at the same time it is clear that the 2023 parenting plan was based on the findings in the memorandum decision.

First, the trial court emphasized that Vos's move to Thurston County was a fact unknown to the court when the 2022 parenting plan was entered. This move reflected a change in circumstances. The court stated, "Had the Court known about Ms. Vos's plan to relocate, it would have, in all likelihood, had a profound effect on the Court's consideration of this issue." CP at 1400.

Second, the trial court found that Vos "continues to inappropriately influence the choices that the children are making, particularly regarding their mental health decisions." CP at 1401. The court found that Vos's actions caused a lack of progress for CK's WISe services. This conduct reflected a change in circumstances.

Third, the trial court found that modification was warranted due to Vos's "ongoing determination to erode the relationship between Mr. Knight and the children, her ongoing paranoia about Mr. Knight, her ongoing influence over the mental health decisions of the children, and her ongoing inability or unwillingness to abide by this Court's orders." CP at 1402. This conduct reflected a change in circumstances.

The other required RCW 26.09.260(1) finding is that a modification is in the children's best interest. The trial court expressly made this finding in both the memorandum decision and the parenting plan.

We hold that the trial court's findings satisfied the requirements of RCW 26.09.260(1).

2. Trial Court's Decisions

Vos broadly argues that the trial court made many manifestly unreasonable decisions and disbelieved uncontroverted evidence and made multiple errors through the case. However, disregarding arguments regarding the November 2022 parenting plan and the proceedings leading up to that plan, Vos identifies only three specific instances of claimed abuse of discretion.

First, Vos argues that the trial court abused its discretion by relying on the GAL reports over other evidence. We disagree.

Here, Vos presented evidence that was contrary to the GAL's reports and testimony. But the trial court found the GAL reports and the GAL's testimony were more reliable than the evidence Vos presented and Vos's testimony. We defer to the trial court's weighing of witnesses and evidence. *Young v. Toyota Motor Sales, U.S.A.*, 9 Wn. App. 2d 26, 32, 442 P.3d 5 (2019).

Second, Vos argues that the trial court abused its discretion by unreasonably focusing on her move to Thurston County in adopting the July 2023 parenting plan. We disagree.

The 2022 parenting plan stated, "Should Ms. Vos continue to reside in the same school district as Mr. Knight, the parties shall share time with the children week on and week off with exchanges on Monday after school." CP at 956. It also set forth specific notice requirements for parents who want to move with children. Vos, in an apparent attempt to maintain 50-50 residential time while living outside of the school district, failed to inform the trial court of her

move to Thurston County. Moreover, the children were forced to keep that information secret during their meeting with the court. The court noted that this probably placed a lot of stress on the children, and was another example of Vos's inappropriate engagement with the children.

Vos argues that her move out of the school district did not violate the 2022 parenting plan. But whether or not there was a violation is less important than the fact that Vos misled the trial court and increased the turmoil that the children were experiencing. Accordingly, we hold that the trial court did not abuse its discretion when relied on Vos's move in adopting the July 2023 parenting plan.

Third, Vos argues that the trial court abused its discretion when it decreased her residential time with the children from 50-50 to supervised visits every other weekend. We disagree.

In its July 2023 memorandum, the trial court based its decision to limit Vos's residential time on her "ongoing determination to erode the relationship between Mr. Knight and the children, her ongoing paranoia about Mr. Knight, her ongoing influence over the mental health decisions of the children, and her ongoing inability or unwillingness to abide by this Court's orders." CP at 1402. The record supports these findings. As a result, the trial court's decision to limit Vos's time with the children was neither "manifestly unreasonable" nor "based on untenable grounds or untenable reasons." *Black*, 188 Wn.2d at 127. Accordingly, we hold that the trial court did not abuse its discretion when it limited Vos's residential time with the children.

3. GAL Bias

Vos argues that the GAL was biased in her investigations and challenges the accuracy of the GAL's findings and reports. We disagree.

A GAL must (1) have contact with all parties, (2) treat all parties with respect, (3) timely perform a parenting investigation, and (4) have independent objectivity and the appearance of fairness. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 28, 144 P.3d 306 (2006).

Vos argues that the GAL showed antagonism toward her, she improperly relied on Knight's statements with little to no fact checking, she improperly made credibility determinations regarding he children and other witnesses, and her reports contradict themselves. However, the only example Vos provides is the GAL's testimony during the trial about an instance where Vos had taken HK to a different agency to initiate services without informing Knight, in violation of the parenting plan. Vos argues that she did what HK wanted and did not make decisions on his behalf.

Vos provides no meaningful argument to support her claim that the GAL was biased. We decline to address issues for which the appellant fails to provide meaningful argument. *Wiklem*, 551 P.3d at 1078 [¶54]. We conclude that Vos has not shown that the GAL was biased to the extent that the July 2023 parenting plan should be reversed.

### 4. Trial Court Bias

Vos argues throughout her brief that the trial court was biased against her. We disagree.

"Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). Under this doctrine, a presiding judge must actually be impartial and also appear to be impartial. *Id*. The question is "whether the judge's impartiality might reasonably be questioned." *Id*. To make this determination, we apply an objective test that assumes a reasonable person knows and understands all the relevant facts. *Id*. The party asserting a violation has the burden of showing

18

evidence of a judge's actual or potential bias. *Id.* A party asserting a violation of the appearance of fairness doctrine must produce sufficient evidence demonstrating bias. *Id.* Mere speculation is not enough. *In re Estate of Hayes*, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015).

Vos argues that the actions of the trial court show an appearance of bias. But the record does not support this argument. We conclude that Vos does not demonstrate that the trial court lacked impartiality or presented an appearance of unfairness. The mere fact that the trial court's rulings did not favor Vos does not reflect bias. Accordingly, we hold that the trial court did not violate the appearance of unfairness doctrine.

CONCLUSION

We affirm the July 2023 parenting plan.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

VELJACIC, J.