# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRIAN WIKLEM,<br><br>      Appellant,<br><br>  v.<br><br>CITY OF CAMAS, a municipal corporation<br>of the State of Washington, and<br>CLARK COUNTY, a political subdivision of<br>the State of Washington,<br><br>      Respondents. | No.59307-6-II<br><br><br>PUBLISHED OPINION |

MAXA, P.J. – Brian Wiklem appeals the trial court's order granting Clark County's motion to dismiss. The city of Camas enacted an ordinance that imposed a new utility tax. As provided by RCW 35.21.706, Wiklem sought to subject the ordinance to a referendum vote and submitted petitions with over 3,000 signatures to the city of Camas. The County conducted its signature verification process and after rejecting a number of signatures, determined that the petitions lacked 91 valid signatures.

Wiklem filed an amended complaint against Camas and the County, alleging that the County's conclusion was erroneous and seeking a writ of mandamus, a writ of review, and declaratory relief. The County filed a motion to dismiss, supported by an affidavit from the County's election director explaining the process through which the County examined the validity of petition signatures. After the trial court granted the motion to dismiss, Wiklem filed a motion for reconsideration in which he provided evidence suggesting that the County had made multiple errors in validating the signatures.

We hold that (1) the trial court did not err in dismissing Wiklem's petition for a writ of mandamus because the act of comparing and certifying signatures on a petition is an act of authorized discretion for which a writ of mandamus is not appropriate; (2) the trial court did not err in dismissing Wiklem's petition for a writ of review because the declaration that the County provided had enough information for the trial court to determine whether the County's discretionary actions in verifying signatures were done illegally or in an arbitrary and capricious manner; (3) because Wiklem failed to make a meaningful argument regarding declaratory relief, we decline to address the issue; and (4) because we hold that the trial court did not err in granting the County's motion to dismiss, we also hold that the trial court did not abuse its discretion in denying Wiklem's motion for reconsideration.

Accordingly, we affirm the trial court's orders granting the County's motion to dismiss and denying Wiklem's motion for reconsideration.

FACTS

Camas enacted an ordinance that imposed a new utility tax. Wiklem sought to subject the ordinance to a referendum vote, and under RCW 35.21.706 he was required to obtain the signatures of 15 percent of Camas's registered voters. Wiklem submitted petitions with over 3,000 signatures of people who purported to be registered voters to Camas. The County conducted its signature verification process and determined that the petitions were short 91 valid signatures.

Wiklem filed an amended and supplemental petition for writ of mandate and complaint.[1] He claimed that the County breached its duty to verify the signatures on the petitions and sought

---

[1] Wiklem originally filed a petition for writ of mandate and complaint and a motion for entry of writ and mandate when Camas and the County refused to determine the sufficiency of the signatures because the ordinance was not attached to the referendum petitions. The trial court

a writ of mandamus ordering the County to validate the signatures. Wiklem also sought either a statutory or constitutional writ of review for the trial court to determine whether the County improperly rejected signatures. He claimed that the County rejected valid signatures and that this decision was illegal and arbitrary and capricious. Wiklem also sought declaratory judgment.

The County filed a motion to dismiss under CR 12(b)(6) for failure to state a claim upon which relief could be granted. The County argued that there were no statutory provisions for challenging its signature verification process and there was no evidence that the County conducted its signature verification process in an arbitrary and capricious manner.

The County submitted a declaration from Catherine Garber, the elections director who managed voter registration and conducted elections in the County. Garber declared,

> When the Elections Office receives petition sheets from a city for an initiative or referendum, my office verifies the signatures received to determine if a sufficient number of signatures have been provided to have the initiative or referendum placed on the ballot.
> . . . .
>
> All full-time and seasonal employees of the Clark County Elections Office receive signature verification training by the Washington State Patrol (WSP) Fraud Unit . . . . The initial training is a two-hour class which includes, but is not limited to, in-class activities on comparing handwriting examples. . . . Before a new seasonal employee begins signature verification, they are paired with a senior verifier for a one-on-one training for a full day to ensure they understand the signature verification process fully.
> . . . .
>
> During the review of signatures on a petition, we allow certified elections observers to be present at all times. . . . We also contacted the petitioner's attorney to let them know they may observe the signature verification process. The certified elections observer's duty is to watch and make sure verifiers are being thorough when searching for the voter.
> . . . .

---

granted Wiklem's motion for entry of writ of mandate, directing Camas to verify the sufficiency of the signatures on the petition.

When the Elections Office receives a petition, each individual sheet must be scanned into the petition module. Once it is uploaded, each sheet must be viewed in the module and compared with the original petition sheet to determine exactly which lines have a signature to be reviewed. Each individual line must be marked in the petition module whether there is a signature to be reviewed.

. . . .

[All verifiers] are reminded that petition sheets are typically signed outside on a clipboard and possible in unfavorable weather conditions and to keep this in mind while making their decision on whether or not to accept the signature. We review one signature at a time to determine if it matches the signature(s) in the voter registration database. The voter registration database contains all signatures that have been provided by the voter. We are able to view all versions of the voter's signature when comparing. Since we set parameters into the petition module, the system will show an error message if the voter does not live within the jurisdiction. Because there were several months from when the voters signed the petition to when we began verification, we also double-checked if there were any recent address changes so that we could ensure that the voter received credit if they resided within Camas city limits at the time of signing. If a voter signs the petition more than once, the first signature is accepted and the second signature is marked as a duplicate and excluded from the count of sufficient signatures.

. . . .

If the verifier rejects [the signature] for any reason, a second review is performed by our lead signature verification person. . . . We check all name variations, nicknames, combination of name variations including first name and date of birth . . . . We reviewed prior signatures on ballot affidavit envelopes to consider any deterioration or progression of a voter's signature if questionable. Every possible resource that is available to the Elections Office is utilized to try to locate the voter.

Clerk's Papers (CP) at 387-90.

The County provided various reasons why signatures were rejected: (1) 29 people signed the petition more than once; (2) 252 people were not registered to vote within Camas; (3) 153 people were not registered to vote; (4) 87 signatures did not match the signatures in the voter registration files; (5) three signatures were not provided; and (6) one signature was illegible.

The trial court granted the County's motion to dismiss. The court ruled that Wiklem did not have a statutory remedy to review the signature verification process and that because verifying signatures was a discretionary act, it was not a judicial function that was subject to a

writ of mandamus. In addition, Wiklem failed to show that the County exceeded its authority or acted illegally or that Garber and her office acted arbitrarily and capriciously.

Wiklem then filed a motion for reconsideration. He submitted a declaration from Brian Lewallen, who reviewed the County's report regarding the signature gathering process. Lewallen asserted that seven times the County stated that a line on the petition had been left blank, when in fact the petition showed signatures on those lines. He also asserted that the County committed clear errors on two other signatures.

Lewallen also submitted declarations from multiple people whose signatures the County determined did not match their voter registration cards, stating that they in fact had signed the petition. And he asserted that his research had revealed that multiple people the County listed as not within the jurisdiction did in fact live in Camas and were registered voters. Lewallen concluded that the County's errors added up to at least 110 signatures, more than the 91 signatures the County determined the petition was short.

The trial court denied the motion for reconsideration. The court explained that it had determined that the signature verification process was a discretionary process and the determination of the sufficiency of a signature is a discretionary act, and therefore a writ of mandamus was not appropriate. The court also stated that it had determined that the County had not acted in an arbitrary and capricious or illegal manner in reviewing the signatures. The court emphasized that the County engaged in a "very thorough and contemplated process." CP at 991. The court stated, "The post-signature declarations fail to convince the court that . . . they override the legislative and administrative process, nor that a legally sufficient claim exists." CP at 991. Therefore, a writ of review also was inappropriate.

Wiklem appeals the trial court's orders granting the County's motion to dismiss and denying his motion for reconsideration.

ANALYSIS

A.    STATUTORY OVERVIEW

RCW 35.21.706 addresses the referendum procedure that applies to an ordinance imposing a business and occupation tax or increasing the rate of the tax.[2]  RCW 35.21.706 states,

> This referendum procedure shall specify that a referendum petition may be filed within seven days of passage of the ordinance with a filing officer, as identified in the ordinance.  Within ten days, the filing officer shall confer with the petitioner concerning form and style of the petition, issue the petition an identification number, and secure an accurate, concise, and positive ballot title from the designated local official.  The petitioner shall have thirty days in which to secure the signatures of not less than fifteen percent of the registered voters of the city, as of the last municipal general election, upon petition forms which contain the ballot title and the full text of the measure to be referred.  *The filing officer shall verify the sufficiency of the signatures on the petition* and, if sufficient valid signatures are properly submitted, shall certify the referendum measure to the next election ballot within the city or at a special election ballot as provided pursuant to RCW 35.17.260(2).

(Emphasis added.)   RCW 35.21.706 does not provide a mechanism for reviewing the signature verification process.

RCW 35A.01.040(5) states, "Petitions containing the required number of signatures shall be accepted as prima facie valid until their invalidity has been proved."

B.    MOTION TO DISMISS

Wiklem argues that the trial court erroneously dismissed his petition for a writ of mandamus and a writ of review.  We disagree.

---

[2] Camas adopted the utility tax ordinance at issue subject to the referendum procedures outlined in RCW 35.21.706 through Camas municipal codes 1.18.010-.030.

1.    Standard of Review

We review de novo a trial court's ruling on a CR 12(b)(6) motion to dismiss. *Wash. Trucking Ass'ns v. Emp't Sec. Dep't*, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). Dismissal is appropriate where it appears beyond doubt that a plaintiff will be unable to prove any set of facts that would justify recovery. *Id.* We assume the truth of the allegations in the plaintiff's complaint and may consider hypothetical facts not included in the record. *Id.*

However, the County submitted Garber's declaration with its motion to dismiss, which the trial court necessarily reviewed. If the trial court considers information outside the complaint, the motion must be converted to a summary judgment motion under CR 56. *LaRose v. King County*, 8 Wn. App. 2d 90, 103, 437 P.3d 701 (2019).

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences. *Id.* Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id.*

2.    Writ of Mandamus

Wiklem argues that the trial court erred in dismissing his petition for a writ of mandamus. We disagree.

a.    Legal Principles

A writ of mandamus "is a rare and extraordinary remedy because it allows courts to command another branch of government to take a specific action, something the separation of powers typically forbids." *Colvin v. Inslee*, 195 Wn.2d 879, 890-91, 467 P.3d 953 (2020).

Courts have the power to issue a writ of mandamus only "[w]hen the law requires a government official to take a particular action." *Id.* at 892. And "mandamus cannot control the discretion that the law entrusts to an official." *Id.* at 893.

" '[M]andamus may not be used to compel the performance of acts or duties which involve discretion on the part of a public official.' " *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010) (quoting *Walker v. Munro*, 124 Wn.2d 402, 410, 879 P.2d 920(1994)). Therefore, a writ of mandamus is an appropriate remedy only " '[w]here the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.' " *Colvin*, 195 Wn.2d at 893 (quoting *SEIU Healthcare 775NW*, 168 Wn.2d at 599).

"[T]he acts of registration officers in comparing and certifying genuine and spurious signatures on petitions are acts of 'authorized discretion.' " *Vangor v. Munro*, 115 Wn.2d 536, 543, 798 P.2d 1151 (1990) (quoting *State ex rel. Harris v. Hinkle*, 130 Wash. 419, 429, 227 P. 861 (1924)). A court can issue a writ of mandamus only when it finds a clear abuse of discretion amounting to a failure to exercise discretion. *Vangor*, 115 Wn.2d at 543. In other words, a "court may compel a state officer to perform a discretionary duty but cannot direct how such discretion shall be exercised." *Brown v. Owen*, 165 Wn.2d 706, 725, 206 P.3d 310 (2009).

When obtaining a writ of mandamus, "the petitioner must demonstrate that (1) the party subject to the writ has a clear duty to act, (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law, and (3) the petitioner is beneficially interested." *Am. Prop. Cas. Ins. Ass'n on Behalf of Washington-Licensed Members v. Kreidler*, 200 Wn.2d 654, 659, 520 P.3d 979 (2022). And even satisfying these requirements does not automatically entitle a

8

party to a writ of mandamus because the court retains discretion whether to issue the writ even where all of the prerequisites are met. *See id.*

b. Analysis

Here, Wiklem petitioned for a writ of mandamus so that the trial court could order the County to validate signatures on the petition. But the County already had conducted its signature validation review. So a writ of mandamus could not order the County to compel performance of something that already had occurred. Instead, Wiklem essentially was asking the trial court to determine that the County's signature validation was erroneous. But the act of comparing and certifying signatures on a petition is an act of authorized discretion. *Vangor*, 115 Wn.2d at 543. As noted above, a writ of mandamus cannot be issued to compel the performance of acts that involve a public official's discretion. *SEIU Healthcare 775NW*, 168 Wn.2d at 599. And Wiklem has not shown that the County failed to exercise its discretion in verifying the signatures.

Wiklem claims that the County mistakenly concluded that various signatures were invalid because they either did not match the signatures on the voter registration cards, the signature lines were left blank, or the signatories were not registered voters. But this claim relates to *how* the County exercised its discretion when verifying signatures, not that the County did not perform its discretionary duty of verifying the signatures.

Further, the County submitted a declaration that explained in detail the process that registration officers used when verifying signatures, showing that it did perform its duty of verifying signatures. Each sheet in the petition was scanned into a petition module, where the sheets in the module were compared with the original sheets to determine which lines had signatures to be reviewed. Each signature was compared to the signature in the voter registration

base and verifiers viewed all versions of the voter's signature and checked all name variations. The system indicated an error if the voter did not live within the jurisdiction and verifiers double checked if there had been any recent address changes. And if a signature did end up being rejected, the lead signature verification person would perform a second review. This process clearly represents an extensive exercise of discretion.

Wiklem makes several arguments as to why the trial court erred in dismissing his petition for a writ of mandamus. First, he claims that the County had a duty to confirm that valid signatures on a referendum petition were valid. But the County fulfilled this duty when the verifiers went through the process of verifying signatures.

Second, Wiklem argues that a writ of mandamus is the appropriate way to challenge the invalidation of signatures on a petition. He relies on *Sudduth v. Chapman*, 88 Wn.2d 247, 558 P.2d 806 (1977) and *Filo Foods LLC v. City of SeaTac*, 179 Wn. App. 401, 319 P.3d 817 (2014).

In *Sudduth*, a petitioner sought a writ of mandamus to compel the secretary of state to certify a ballot initiative. 88 Wn.2d at 249. The petitioner showed that the secretary of state had determined that the petitions lacked sufficient signatures based in part on the fact that he did not have any record, or current record, of voters' registrations and failed to looked beyond the cards on file in his office to determine whether the people signing the petition were registered voters. *Id.* The Supreme Court concluded that the secretary of state "must be diligent in maintaining the records in his office so that signatures can be effectively and accurately checked" and "[w]hile the Secretary of State necessarily has discretion in selecting the methods of keeping his records current and orderly, some action must be taken when the records are known to be incomplete." *Id.* at 254-55.

10

Here, the County kept an extensive record of registrations in a voter registration database and took multiple steps in determining whether the signatories were registered voters. The secretary of state in *Sudduth* failed to exercise his discretion when he did not look beyond the cards on file in his office, ignoring his duty under the statute to maintain reasonable records. 88 Wn.2d at 249. But unlike the secretary of state in *Sudduth*, the County did not ignore this duty. And the Supreme Court in *Vangor* concluded that *Sudduth* did not compel a different result when holding that the trial court correctly denied a writ of mandamus because comparing and certifying signatures on petitions are acts of authorized discretion. *Vangor*, 115 Wn.2d at 543-44.

In *Filo Foods*, a committee collected 2,506 signatures on supporting petitions for a proposed ballot initiative. 179 Wn. App. at 403. King County validated 1,780 signatures where only 1,536 signatures were required and issued a certificate of sufficiency. *Id.* at 403-04. Challengers filed a challenge to the certificate of sufficiency. *Id.* at 404. They sought a writ of review and writ of mandamus, raising the single issue of whether RCW 35A.01.040(7) required the city to strike all signatures, including the original, of each person who signed the petition more than once. *Id.*

The court held that denying a voter who signs petitions more than once the right to have one signature counted does not guard against fraud and mistake. *Id.* at 410. And therefore, the provision of RCW 35A.01.040(7) that required the striking of all a voter's multiple signatures was unconstitutional. *Id.*

Wiklem did not seek a writ of mandamus to determine whether a specific statute was constitutional; he sought to determine whether the County properly invalidated signatures on his petition. Therefore, *Filo Foods* does not apply here.

11

Wiklem also cites to *State ex rel. La Follette v. Hinkle*, 131 Wash. 86, 229 P. 317 (1924), and *State v. Superior Court of Spokane County.*, 59 Wash. 670, 110 P. 622 (1910). He argues that these cases involved issuing a writ of mandamus for election-related matters. But neither of these cases addressed the issue of the signature verification process. In fact, even Wiklem acknowledges that the language regarding the signature verification process in *Hinkle* was dicta.

Third, Wiklem claims that the verification of signatures on a petition is not discretionary. But the Supreme Court in *Vangor* expressly held that "the acts of registration officers in comparing and certifying genuine and spurious signatures on petitions are acts of 'authorized discretion.'" 115 Wn.2d at 543 (quoting *Hinkle*, 130 Wash. at 429).

Fourth, Wiklem claims that the requirements for signatures on a petition should be liberally construed and so we should hold that the County failed to treat valid signatures as valid as required under RCW 35A.01.040(5). As noted above, RCW 35A.01.040(5) states, "Petitions containing the required number of signatures shall be accepted as prima facie valid until their invalidity has been proved." But there is no indication that the County did not treat the signatures as valid until they proved based on their analysis that certain signatures were not valid.

The verifiers were instructed to keep in mind that typically people signed the petition sheets outside on a clipboard and possibly in unfavorable weather conditions; verifiers were able to view all versions of a voter's signature when comparing; verifiers checked all name variations and nicknames; and verifiers considered any deterioration or progressions of a voter's signature by reviewing all prior signatures on ballot affidavit envelopes. These steps allowed for the County to liberally construe signatures on a petition.

Fifth, Wiklem argues that the lack of a remedy in RCW 35.21.706 fulfills the requirement that he must have no plain, speedy, and adequate remedy in the ordinary course of the law. But this requirement is not at issue here. The issue is the first requirement, that "the party subject to the writ has a clear duty to act." *Am. Prop. Cas. Ins. Ass'n*, 200 Wn.2d at 659.

RCW 35.21.706 provides for the filing officer to verify the sufficiency of the signatures. This process involves discretionary acts for which a writ of mandamus is not appropriate. Therefore, we hold that the trial court did not err in granting the County's motion to dismiss regarding the writ of mandamus.

3. Writ of Review

Wiklem argues that the trial court erred in dismissing his petition for a writ of review. We disagree.

a. Legal Principles

There are two classes of writs of review – the statutory writ and the constitutional writ. *Washington State Dep't of Corr. v. Barnett*, 24 Wn. App. 2d 961, 966, 522 P.3d 52 (2022), *review denied*, 1 Wn.3d 1018 (2023)). Wiklem sought both writs.

Regarding a statutory writ of review, RCW 7.16.040 provides,

> A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

Under this statute, " 'the petitioner must show (1) that an inferior tribunal (2) exercising judicial functions (3) exceeded its jurisdiction or acted illegally, and (4) there is no adequate remedy at law.' " *Barnett*, 24 Wn. App. 2d at 967 (quoting *Wash. Pub. Emps. Ass'n v. Wash. Pers. Res.*

*Bd.*, 91 Wn. App. 640, 646, 959 P.2d 143 (1998)). There is no basis for superior court review if any of these elements are absent. *Barnett*, 24 Wn. App. 2d at 967.

"To determine whether an agency was exercising judicial functions, courts weigh the following factors: (1) whether a court has been charged with making the agency's decision, (2) whether the decision is the type that courts historically have made, (3) whether the decision involved the application of law to fact, and (4) whether the decision resembled the ordinary business of courts as opposed to legislators or administrators." *Id.* at 968.

A statutory writ is an extraordinary remedy and should be used sparingly. *Id.* at 967. " 'Although the writ [of review] may be convenient, no authority supports its use as a matter of expediency.' " *Id.* (quoting *Dep't of Lab. & Indus. v. Bd. of Indus. Ins. Appeals*, 186 Wn. App. 240, 246-47, 347 P.3d 63 (2015)).

A constitutional right to judicial review still exists even when a petitioner fails to obtain a statutory writ. *Barnett*, 24 Wn. App. 2d at 971. The fundamental purpose of a constitutional writ is " 'to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority.' " *Id.* at 971-72 (quoting *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998)). Therefore, a court will accept review if the petitioner can allege facts that would establish the lower decision was "illegal or arbitrary and capricious." *Barnett*, 24 Wn. App. 2d at 972 (quoting *Saldin*, 134 Wn.2d at 292). However, the trial court has broad discretion when determining whether to accept review. *Barnett*, 24 Wn. App. 2d at 972.

      b.    Analysis

Here, the statutory writ of review is unavailable because the County was not exercising a judicial function. As noted above, the County was exercising a discretionary function delegated

14

to it by RCW 35.21.706.  Wiklem does not argue otherwise and in fact does not directly address the statutory writ of review in his briefing.

Regarding the constitutional writ of review, Wiklem argues that the County did not provide a full record and that without the record, the trial court could not have made a ruling on whether the County's actions were illegal or arbitrary and capricious.

However, Garber's declaration provided detailed information about the County's signature verification process and demonstrated that the County exercised due diligence.  This declaration provided enough information for the trial court to determine whether the County's process in verifying signatures was performed illegally or in an arbitrary and capricious manner.

Wiklem argues that in his reconsideration motion he produced evidence that the County made decisions in the verification process that were erroneous and arbitrary.  Therefore, the trial court should have reviewed the entire record.  However, we are reviewing the trial court's order on the motion to dismiss.  The trial court did not have the evidence Wiklem produced on reconsideration when it entered its dismissal order.

We hold that the trial court did not err in granting the County's motion to dismiss regarding the writ of review.

4.    Declaratory Relief

In the alternative, Wiklem argues that this case may be properly resolved by declaratory relief.  Therefore, upon reversal of the trial court's order granting the County's motion to dismiss, the court should be free to determine whether declaratory relief is appropriate.

Camas and the County argue that Wiklem failed to preserve this issue for appeal because he did not claim that dismissal was improper regarding declaratory relief in the trial court.  But even on appeal, Wiklem fails to explain why we should reverse the trial court's order granting

the County's motion to dismiss regarding declaratory relief. Wiklem spends only three sentences in his brief discussing declaratory relief. We generally decline to consider an issue when the appellant has failed to provide meaningful argument. *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 21, 408 P.3d 1123 (2017). Therefore, we decline to address this issue.

C.      MOTION FOR RECONSIDERATION

Wiklem argues that the trial court erred in denying his motion for reconsideration. We disagree.

We review a trial court's decision granting or denying a motion for reconsideration for abuse of discretion. *Hively v. Port of Skamania Cnty.*, 193 Wn. App. 11, 14, 372 P.3d 781 (2016).

CR 59(a) states as grounds for granting a motion for reconsideration:

(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
. . . .
(9) That substantial justice has not been done.

Wiklem spends only four sentences in his brief on the trial court's denial of his motion for reconsideration. His only "argument" is that the trial court should have granted his motion for reconsideration for all the reasons he claimed the trial court erred in granting the County's motion to dismiss. Again, we generally decline to consider an issue when the appellant has failed to provide meaningful argument. *Billings*, 2 Wn. App. 2d at 21. However, Wiklem relies only on his arguments regarding the dismissal order. Because we hold that the trial court did not err in granting the County's motion to dismiss, we also hold that the trial court did not abuse its discretion in denying Wiklem's motion for reconsideration.

16

No.59307-6-II

CONCLUSION

We affirm the trial court's orders granting the County's motion to dismiss and denying

Wiklem's motion for reconsideration.

_____
MAXA, P.J.

We concur:

_____
GLASGOW, J.

_____
CHE, J.

17