# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| 1311 SOUTH TACOMA WAY LLC, a Colorado Limited Liability Company, | No. 59301-7-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| COMPASS GROUP USA, INC., a Delaware Corporation, | |
| Respondent. | |

MAXA, J. – 1311 South Tacoma Way, LLC (1311) appeals the trial court's two orders granting summary judgment in favor of Compass Group USA, Inc. (Compass) on their declaratory judgment claims and the trial court's order denying their motion for leave to amend their complaint to add a claim for reformation.

Compass sought to lease commercial property from 1311. The property included a building with two floors and a gravel parking lot. During negotiations, the parties exchanged a term sheet that contained information about the premises, including square footage, base rent, and the taxes owed, among other things. The term sheet stated that the calculation of the interior area of the building excluded the second floor office area.

1311 drafted and Compass signed a lease to rent the property. Unlike the term sheet, the lease stated that Compass would lease the entire property and did not exclude the second floor

office area. The lease provided that Compass could make certain alterations only with 1311's consent, but that alterations involving "moveable partitions" did not require 1311's consent.

After Compass occupied the property, it renovated and used the second floor office area. Compass also installed a temporary electric fence inside an existing fence surrounding the premises. 1311 sued Compass, arguing that Compass was not entitled to occupy the second floor office area and that Compass failed to obtain 1311's consent before installing the temporary electric fence. 1311 sought only a declaration that Compass had breached the lease.

We hold that (1) the trial court did not err when it granted Compass's summary judgment motion and dismissed 1311's claim that Compass was not allowed to occupy the second floor office area under the lease because the lease unambiguously included the entire property and did not exclude the second floor office area; (2) the trial court did not abuse its discretion when it denied 1311's motion to amend their complaint to add a claim for reformation because the amendment would have been futile; and (3) the trial court erred when it dismissed 1311's claim for declaratory relief regarding Compass's installation of the temporary electric fence because 1311 properly sought such relief under the Uniform Declaratory Judgment Act (UDJA), chapter 7.24 RCW.

Accordingly, we affirm the trial court's orders granting Compass's summary judgment motion regarding 1311's second floor office area claim and denying 1311's motion to amend their complaint. We reverse the trial court's order granting Compass's summary judgment motion regarding 1311's electric fence claim, and we remand for further proceedings.

## FACTS

1311 owns property in Tacoma that consists of a two-story building with office space, a warehouse, a gravel parking lot, and a loading dock for the warehouse. The first floor of the

building includes office space and the warehouse.  The second floor of the building consists of a smaller office area.

*Lease Negotiations*

In late 2021, 1311 and Compass entered into negotiations to lease the property.  Compass was represented by Greg Millerd, a broker.  During negotiations, Millerd represented to 1311 that Compass did not want to lease all of the office space.  Millerd sent an email to Daryl Mechem, the managing member of 1311, in which he stated that Compass did not need the full amount of office space.  Mechem stated,

> That Compass would not occupy the 2nd floor office was the basis of the negotiation going forward and, at no time until after Compass had been on site for a couple of months was the subject matter of occupying the 2nd Floor raised.  At no time did the rent discussion include rent on the 2nd floor office. . . .  The rent for the office in the building was based on Compass wanting to "exclude the second-floor office."

Clerk's Papers (CP) at 210.

Millerd explained Compass's intentions related to their occupation of the second floor office area:

> Q.  Okay.  So when it says, "Neither prospect needs the full amount of office, but [Compass] seems to be able to absorb the most," would that be information you would have acquired from a representative of . . . Compass?
>
> A.  We've – in discussions with the client and the local representation, we identified the need for office.  And that first floor office appeared to meet the need –
>
> Q.  Okay.
>
> A.  – based on my understanding.
>
> Q.  And that was information you obtained from the client?
>
> A.  Correct.

CP at 801 (31:12-25, 32:1-2).

3

Q. Was the basis for the negotiations of the lease with respect to the premises ever anything different than 32,952 square feet of shell and 4,860 square feet of office on the first floor?

A. To my recollection, no.

CP at 802 (36:2-7).

Q. Now, do I understand correctly that the entire discussion as to the lease premises up until the point of execution of [the lease] was that Compass was going to be leasing 32,952 square feet of shell and 4,860 square feet of office?

A. That was the sense of the conversation as it related to the premises.

Q. Okay. Did that ever change during the course of the lease negotiation?

A. Not to my recollection.

CP at 809 (65:8-20).

Q. Okay. As you sit here today, in talking about the time period up to the moment this lease was executed, do you have any information that would suggest that the landlord was aware that Compass intended to occupy the second-floor office space without paying rent?

A. I don't have any information to suggest that they were intending to occupy the space.

CP at 810 (68:14-21).

During the negotiation process, brokers for 1311 and Compass exchanged a term sheet. The term sheet that the parties reference in this case included negotiations about lease terms such as the amount of rent and the square footage of the property used to calculate rent. It also stated that the "[c]alculation of office/shell area excludes second level office/mezzanine." CP at 15.

The term sheet set forth a base rent of $0 for the first month, and a rent of $27,440 per month, with 3% annual increases. It also included a section discussing real estate taxes and insurance. The term sheet showed edits and comments from 1311 and Compass.

The term sheet was not signed by the parties, and contained the following provision:

4

> *The submission of the term sheet does not constitute an offer to lease.* A lease shall not be binding and in effect until the lease document has been executed by both parties. Tenant shall have no liabilities for any expenses incurred in anticipation of the lease or in replying to request unless they have been specifically authorized in writing by Tenant. Tenant reserves the right to reject any proposal it receives. *This request for proposal contains the specifications generally required by Tenant, which are subject to change and modification.*

CP at 17 (emphasis added).

*The Lease*

In October 2021, 1311 and Compass entered into the final lease agreement. The term of the lease was 87 months. Unlike the $27,440 in rent stated in the term sheet, the rent payable in the lease started at $30,300 per month and escalated during the lease term to $37,880 per month.

The lease agreement was titled "Single Tenant for Entire Parcel – NNN." CP at 20. "NNN" refers to a "Net, Net, Net" lease, meaning that Compass would pay "all Additional Rent and other impositions, insurance premiums, repair and maintenance charges, and any other charges, costs, obligations, liabilities, requirements, and expenses." CP at 22. The lease provided that Compass would pay all taxes and all insurance applicable to the premises.

Section 2 of the lease, titled "Premises," stated, "Landlord leases to Tenant, and Tenant leases from Landlord, the Premises upon the terms specified in this Lease." CP at 21. The lease defined the "leased premises" as "that real property legally described on the attached Exhibit A, including all improvements thereon, and commonly described as 1311 South Tacoma Way." CP at 20. Exhibit A to the lease included the legal description of the property. The legal description of the property did not exclude the second floor office area.

The lease permitted use of the premises only for "general warehousing and office." CP at 20. The lease did not restrict the use of the second floor office area.

Section 10 of the lease, titled "Alterations," stated,

Tenant may make alterations, additions or improvements to the Premises (the 'Alterations'), only with the prior written consent of Landlord, which consent, with respect to Alterations not affecting the structural components of the Premises or utility systems therein or for which the aggregate cost and expense does not exceed $10,000, shall not be unreasonably withheld, conditioned, or delayed. . . . *The term 'Alterations' shall not include*: (i) any of Tenant's Work approved by Landlord pursuant to Exhibit B, (ii) Tenant's Signage . . . or (iii) *the installation of . . . movable partitions*, or Tenant's equipment and trade fixtures that may be installed and removed without damaging existing improvements or the structural integrity of the Premises.

CP at 24 (emphasis added).

A lease addendum also included a section about alterations. It stated,

Notwithstanding the provisions of Section 10 of the Lease, (i) Tenant may make non-structural, interior alterations or improvements to the Premises costing less than $25,000 in the aggregate per year without Landlord's consent, and (ii) otherwise, unless such alteration or improvement would adversely affect the structure, exterior, or systems of the Premises, Landlord's consent as to any other alterations or improvements made by or on behalf of Tenant to the Premises shall not be unreasonably withheld, conditioned, or delayed.

CP at 49.

Section 33(c) of the lease agreement stated,

This Lease contains all of the covenants and agreements between Landlord and Tenant relating to the Premises. *No prior or contemporaneous agreements or understandings pertaining to the Lease shall be valid or of any force or effect* and the covenants and agreements of this Lease shall not be altered, modified or amended except in writing signed by Landlord and Tenant.

CP at 33 (emphasis added).

The lease provided that if either party brought an action for any relief against the other, the losing party must pay the prevailing party their reasonable attorney fees, including on appeal.

*Compass Work on the Premises*

In January 2022, after Compass took possession of the property, they renovated the second floor office space.

In March, Compass contracted to install a temporary electric fence around the gravel parking lot within the existing fence surrounding the property. Compass believed the fence to be a "moveable partition[]" exempted from the consent provision of the Lease, and initially Compass did not seek 1311's permission to install the fence. *See* CP at 24.

*Trial Court Proceedings*

In January 2023, 1311 sued Compass. In their first amended complaint, 1311 alleged that the lease did not include the second floor office area. They argued that neither the term sheet nor the lease included the square footage of the second floor area in the rent, and that therefore Compass could not occupy the second floor office area. 1311 also stated that, during lease negotiations, Compass represented to 1311 that they did not need or intend to use the second floor office area. 1311 further alleged that Compass installed the electric fence without 1311's consent and was in breach of the lease.

1311 requested a declaration from the trial court that the second floor office area was not part of the premises leased, that Compass was not entitled to occupy the space, and that Compass breached the lease when it installed the electric fence. The complaint sought no other relief.

In April, Compass filed a motion for partial summary judgment, seeking dismissal of 1311's second floor claim. Compass argued that the lease was unambiguous because it stated that Compass would lease the entire property and did not exclude the second floor office area. Compass argued that 1311's second floor claim relied on the unsigned term sheet, which had been superseded by the lease. In support of its motion, Compass filed a declaration from Lynn Verschueren, Compass's Regional Vice President. Verschueren stated,

> It was our understanding that Compass was leasing the entire property, with the right to use the second floor mezzanine and office. This understanding was consistent with the prior leasor [sic], Tacoma Electric, and with the lease itself, which was a 'Single Tenant for Entire Parcel' form lease provided by Plaintiff,

stated Compass was leasing the 'entire parcel' and described the parcel leased as the entire legal property.

CP at 59-60.

1311 filed a cross-motion for partial summary judgment. 1311 asserted that Compass was not entitled to occupy the second floor because that area was not explicitly included in the lease and because the rental rates in the term sheet identified a different rental rate for the warehouse. 1311 also moved for summary judgment on the electric fence claim, asserting that Compass installed the temporary electric fence without 1311's permission in violation of the lease. The trial court scheduled oral argument on the summary judgment motions for June 30.

On June 21, 1311 moved for a continuance under CR 56(f) so that they could depose Millerd, the broker who had represented Compass during the lease negotiations. The trial court granted 1311's motion and rescheduled oral argument on the summary judgment motions to July 21.

On July 10, 1311 filed a motion for leave to amend their first amended complaint to state a claim for reformation of the lease. 1311 sought to reform the lease based on a unilateral mistake by 1311 and inequitable conduct by Compass. Compass opposed the motion.

On July 21, the trial court entered an order denying 1311's summary judgment motions and granting Compass's summary judgment motion regarding the second floor claim. The order stated,

> The Court concludes the Lease is fully integrated and declines to adopt any extraneous information in aiding in interpreting the Lease. The Court concludes the premises leased by Defendants includes the entire premises described in Exhibit A of the Lease, including the second floor office and mezzanine at the rent described in the Lease.

CP at 270. The trial court also denied 1311's motion to amend their first amended complaint to assert a claim of reformation of the lease.

1311 moved for reconsideration of the orders. In their motion for reconsideration, 1311 asserted that the parties may have been mutually mistaken about the property that was to be rented in the lease. Compass opposed the motion for reconsideration. On reply, 1311 submitted a revised second amended complaint which asserted both unilateral and mutual mistake. The trial court denied 1311's motion for reconsideration.

In August, Compass filed a summary judgment motion on the electric fence claim. Compass argued that the consent provision did not apply to the electric fence and if it did, 1311 had unreasonably withheld consent for the fence. The trial court denied the motion based on the existence of material issues of fact.

In November, Compass again filed a motion for partial summary judgment to dismiss 1311's electric fence claim. Compass now argued that 1311 failed to demonstrate the existence of a justiciable controversy because it sought declaratory relief without asserting any remedy.

The trial court granted Compass's summary judgment motion, dismissing 1311's claim for declaratory relief. The court entered an order dismissing the lawsuit with prejudice. And the court also awarded attorney fees and costs to Compass.

1311 appeals the trial courts orders dismissing their second floor claim, denying 1311's motion seeking leave to amend their first amended complaint to state a claim for reformation, and dismissing 1311's claim for declaratory relief related to the installation of the electric fence.

ANALYSIS

A.      DISMISSAL OF SECOND FLOOR OFFICE CLAIM

1311 argues that the trial court erred when it dismissed their claim that Compass breached the lease by occupying the second floor office area. They argue that the lease is ambiguous, and that the trial court should have considered extrinsic evidence regarding the lease

negotiations to determine whether or not the leased premises included the second floor office area. We disagree.

1.  Legal Principles

The primary purpose of contract interpretation is to ascertain the intent of the parties at the time of the contract formation. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). We give words their ordinary meaning unless the entire agreement clearly demonstrates otherwise. *Id*. at 713. Under the context rule, we can examine the context surrounding a contract's execution, including the consideration of extrinsic evidence to help understand the parties' intent. *Id*.

We can use extrinsic evidence to help determine the meaning of specific terms and words, but not to demonstrate a party's intention outside the contract or to modify the written words. *Id*. Extrinsic evidence can be used only " 'to illuminate what was written, not what was intended to be written.' " *Wilkinson v. Chiwawa Cmtys. Ass'n.*, 180 Wn.2d 241, 251, 327 P.3d 614 (2014) (quoting *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 697, 974 P.2d 836 (1999)). Courts "do not consider extrinsic '[e]vidence that would vary, contradict or modify the written word' or 'show an intention independent of the instrument.' " *Wilkinson*, 180 Wn.2d at 251 (alteration in original) (quoting *Hollis*, 137 Wn.2d at 695).

A contract provision is ambiguous if the provision's "meaning is uncertain or is subject to two or more reasonable interpretations." *Viking Bank*, 183 Wn. App. at 713. However, "[a] contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings." *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). And we will avoid reading an ambiguity into a contract when it is avoidable. *Id*.

10

We review de novo summary judgment orders. *Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 584, 551 P.3d 1067 (2024). We view all evidence, including reasonable inferences, in the light most favorable to the nonmoving party. *Id*. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. When reasonable minds can come to different conclusions on an issue, there exists a genuine issue of material fact. *Id*.

2.   Analysis

The issue here is whether the leased property included the second floor office area. There are four factors that indicate that the lease included the second floor office area. First, the language of the lease provided that 1311 would lease the entire property as described in Exhibit A to the lease. Exhibit A is the legal description of the property, and it did not exclude the second floor of the building. And the lease itself was titled, "Single Tenant *for Entire Parcel*." CP at 20 (emphasis added).

Second, the lease was an NNN lease, which provided that Compass would pay all necessary taxes and insurance premiums applicable to the premises. The lease did not specify that Compass was responsible only for prorated taxes and insurance payments on the premises excluding the second floor office area. So Compass actually paid taxes and insurance on the second floor office area.

Third, the lease was fully integrated. Section 33(c) of the lease agreement stated that the lease contained all agreements between 1311 and Compass related to the premises. It specifically stated, "No prior or contemporaneous agreements or understandings pertaining to the Lease shall be valid or of any force or effect." CP at 33.

Finally, 1311 drafted the lease. They decided on the language that would be included in the lease. Even if we believed that the lease was ambiguous, the general rule is that ambiguities in a contract are construed against the drafter. *Borton & Sons, Inc. v. Burbank Props., LLC*, 9 Wn. App. 2d 599, 606, 444 P.3d 1201 (2019).

1311 argues that the broad language in the lease regarding the leased premises merely meant that Compass would be the only tenant on the property. 1311 claims that this interpretation is reasonable, making the lease ambiguous regarding the scope of the leased premises. But if that was 1311's understanding, they could have inserted language to that effect in the lease. They did not. The lease clearly states in more than one place that Compass was leasing the entire property, and that language is not ambiguous.

1311 argues that the trial court should have considered extrinsic evidence, specifically the lease negotiations and the term sheet, and that evidence showed that the leased premises did not include the second floor office area. There was evidence that during negotiations, Compass stated that it did not need the second floor office area. And the term sheet stated that the "[c]alculation of office/shell area excludes second level office/mezzanine." CP at 15.

However, the term sheet specifically stated that it did not constitute an offer and that the proposal was subject to change. And the executed lease expressly superseded all prior negotiations: "No prior or contemporaneous agreements or understandings pertaining to the Lease shall be valid or of any force or effect." CP at 33. Again, 1311 drafted that provision. As noted above, we will not consider extrinsic evidence to vary, contradict, or modify the language of the contract. *Wilkinson*, 180 Wn.2d at 251. 1311 is attempting to do just that.[1]

---

[1] We note that the rent to be charged under the lease changed from the term sheet to the signed lease. So the premises area was not the only change.

1311 relies on *Emrich v. Connell*, 105 Wn.2d 551, 716 P.2d 863 (1986), to support their argument that we should consider extrinsic evidence to interpret the lease. In that case, the court stated that extrinsic evidence could be considered to determine whether a contract is integrated. *Id.* at 556. But here, the lease language leaves no question that the lease is integrated.

We hold that the trial court did not err when it granted Compass's summary judgment motion dismissing 1311's claim for declaratory relief related to Compass's occupancy of the second floor office area.

## B. DENIAL OF MOTION TO AMEND COMPLAINT

1311 argues that the trial court abused its discretion when it denied their motion seeking leave to amend their complaint to state a claim for reformation of the lease. We disagree.

### 1. Legal Principles

Leave to amend pleadings "shall be freely given when justice so requires." CR 15(a). Courts should freely give leave to amend except when it would prejudice the opposing party. *R.N. v. Kiwanis Int'l*, 19 Wn. App. 2d 389, 416, 496 P.3d 748 (2021). Courts may consider "undue delay, unfair surprise, and futility of amendment" when determining prejudice. *Id*. Relevant here, a trial court may consider whether a new claim would be futile, and the court does not abuse its discretion when it denies a motion to add a futile claim. *Id*.

"Reformation is an equitable remedy employed to bring a writing that is materially at variance with the parties' agreement into conformity with that agreement." *Denaxas v. Sandstone Ct. of Bellevue, LLC*, 148 Wn.2d 654, 669, 63 P.3d 125 (2003). "A party may seek reformation of a contract if (1) the parties made a mutual mistake or (2) one of them made a mistake and the other engaged in inequitable conduct." *Id.* But "[c]ourts are not at liberty, under the guise of reformation, to rewrite the parties' agreement and foist upon the parties a contract

13

they never made." *Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.* [SPEEA], 139 Wn.2d 824, 833, 991 P.2d 1126 (2000). " '[R]eformation is justified only if the parties' intentions were identical at the time of the transaction.' " *Denaxas*, 148 Wn.2d at 669 (quoting *SPEEA*, 139 Wn.2d at 832-33). And the facts supporting reformation must be proven by clear, cogent and convincing evidence. *Denaxas*, 148 Wn.2d at 669.

We review a trial court's order denying a motion to amend for an abuse of discretion. *R.N.*, 19 Wn. App. 2d at 416. A court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Id*.

2.    Analysis

1311 sought to amend its complaint to add a new claim for reformation of the lease based on unilateral mistake and late-claimed mutual mistake. But in order to succeed in a reformation claim, 1311 had to show that the lease terms conflicted with the parties' prior agreement. *Denaxas*, 148 Wn.2d at 669. 1311 has not shown by clear, cogent and convincing evidence that they had a prior agreement with Compass that conflicted with the lease.

1311 argues that the lease was negotiated on the basis that the second floor office area would not be included in the leased premises. But negotiations do not constitute an agreement. And 1311 references the term sheet, which stated that the second floor office area was excluded. But the term sheet could not constitute a "prior agreement" for purposes of the reformation claim. The term sheet was a negotiation document that was unsigned by either party, and it expressly stated that it was not an offer to lease and was subject to change.

In the absence of any prior agreement between 1311 and Compass that was inconsistent with the lease provisions, granting the motion to amend to add a reformation claim would have been futile.

1311 relies on *Washington Mutual Savings Bank v. Hedreen*, 125 Wn.2d 521, 886 P.2d 1121 (1994), to argue that the trial court erred when it denied their motion for reformation. In that case, the Supreme Court affirmed the trial court's grant of reformation of a lease. *Id*. at 533. But this situation is distinguishable from *Hedreen* in two significant respects. First, *Hedreen* involved a signed, written agreement between the parties before the lease was executed. *Id*. at 523. In contrast, there was no such prior agreement between 1311 and Compass. Second, the party opposing reformation prepared the lease, and did so with knowledge that it contained a discrepancy with the parties' prior agreement. *Id*. at 524. In this case, 1311, the party seeking reformation, drafted the lease.

We hold that the trial court did not abuse its discretion when it denied 1311's motion for leave to amend their complaint to add a claim of reformation of the lease.

C.  DISMISSAL OF DECLARATORY RELIEF FOR ELECTRIC FENCE CLAIM

1311 argues that the trial court erred when it dismissed their claim for declaratory relief related to Compass's installation of the electric fence. We agree.

1.  Legal Principles

The UDJA provides that courts "shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.010. Further, the UDJA allows persons whose rights are affected by a contract to "have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

We review a trial court's dismissal of a declaratory judgment action for abuse of discretion. *Grandmaster Sheng-Yen Lu v. King County*, 110 Wn. App. 92, 99, 38 P.3d 1040

(2002). A trial court abuses its discretion if its decision is based on untenable grounds or is manifestly unreasonable. *Id.*

> 2. Analysis

1311 sought a declaration from the trial court that Compass breached the lease when it installed the electric fence. Such a declaration of rights under a contract is explicitly permitted under the UDJA. RCW 7.24.020. In addition, CR 57 states, "The procedure for obtaining a declaratory judgment pursuant to the [UDJA], RCW 7.24, shall be in accordance with these rules . . . . The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." The plain language of CR 57 explicitly states that the existence of another remedy does not always preclude a declaratory judgment action.

Compass claims that the trial court correctly dismissed the claim because 1311 failed to plead alternative forms of relief before it sought a declaratory injunction. Compass cites to *Stafne v. Snohomish County*, 174 Wn.2d 24, 39, 271 P.3d 868 (2012); and *Hawkins v. Empres Healthcare Management, LLC*, 193 Wn. App. 84, 102, 371 P.3d 84 (2016).

In *Stafne*, Stafne had been granted a boundary line adjustment after he purchased adjoining property from the Department of Natural Resources. 174 Wn.2d at 27-28. He subsequently submitted a proposal to the County Council to redesignate portions of his property from forest land to rural residential. *Id.* at 28. The Council did not adopt Stafne's proposal. *Id.* Stafne then filed a complaint and a petition under the Land Use Petition Act (LUPA), chapter 36.70 RCW, in superior court. *Id.* at 29. In addition to other claims, Stafne sought a declaratory judgment that the land he acquired did not meet the statutory definition of forest land and therefore could not be designated as forest land as a matter of law. *Id.*

The trial court dismissed Stafne's claims, including his declaratory judgment action. *Id*. The Court of Appeals affirmed, and held among other things that the LUPA petition was untimely. *Id*. The Supreme Court affirmed, and provided a brief analysis of the declaratory judgment claim:

> Declaratory relief will not be ordered where the petitioner has an adequate legal remedy. Stafne sought a judgment declaring the legal consequences of his boundary line adjustment, which incorporated the land he acquired from DNR into the parcel he already owned. A boundary line adjustment is a final land use decision that Stafne could have timely sought relief under LUPA. He did not.

*Id.* at 39 (citations omitted).

In *Hawkins*, Hawkins previously had entered into a settlement agreement with Talbot, a medical facility. 193 Wn. App. at 90. The settlement agreement provided that Hawkins released any future claims against Talbot. *Id*. After she discovered allegedly falsified medical records, Hawkins sought to rescind the release and asked for a declaratory judgment that her release did not apply to claims relating to those records. *Id.* at 91. The trial court ruled that the release barred Hawkins's claims and res judicata barred Hawkins's declaratory judgment action. *Id*.

The Court of Appeals stated that a court will not grant declaratory relief "when it can provide an adequate alternative remedy." *Id.* at 102. "The party seeking declaratory relief must show the absence of the alternative remedy." *Id*. The court concluded, "[T]o bring those claims again, Hawkins must obtain a rescission of the Release. The declaratory judgment she asks for would have this exact effect; it is simply rescission under another name. Rescission provides an adequate alternative remedy for Hawkins." *Id*. Accordingly, the court affirmed dismissal of the declaratory judgment claim. *Id.* at 103.

Compass relies on the broad statements in both *Stafne* and *Hawkins* that declaratory relief is not available if there is adequate alternative remedy. *Stafne*, 174 Wn.2d at 39; *Hawkins*, 193

17

Wn. App. at 102. But *Stafne* and *Hawkins* are distinguishable because in both cases the plaintiff actually pleaded the alternative remedy. *Stafne*'s primary claim was under LUPA. The declaratory judgment claim was another attempt to obtain the relief he sought under LUPA, which the court ruled was untimely. *Hawkins*'s primary claim was that her release must be rescinded. The declaratory judgment claim was another attempt to obtain what essentially would be a rescission, which the court had rejected. The courts correctly held that declaratory relief was not available when the plaintiff's alternative claim already had been rejected.

Here, there are no similar unique facts. 1311 did not plead any alternative remedy that had been rejected by the trial court. In addition, it is significant that neither *Stafne* nor *Hawkins* mentioned the UDJA. RCW 7.24.010 states that courts have authority to declare rights "whether or not further relief is or could be claimed." And RCW 7.24.020 allows parties to bring actions seeking a declaration of their rights under a contract, which is what 1311 did in this case.

We hold that the trial court abused its discretion when it granted Compass' motion for partial summary judgment dismissing 1311's claim for declaratory relief.

D. TRIAL COURT ATTORNEY FEES

The trial court awarded Compass the full amount of their attorney fees, based on the attorney fee provision in the lease. However, Compass no longer is the prevailing party regarding the declaratory judgment claim. Therefore, on remand the trial court must remove that portion of the attorney fees attributable to the declaratory judgment claim from the judgment in favor of Compass, if segregation is possible.

E. ATTORNEY FEES ON APPEAL

Compass argues that they are entitled to reasonable attorney fees as prevailing party on appeal under the attorney fee provision in the lease, pursuant to RAP 18.1. Compass is the

18

prevailing party on appeal regarding the second floor office area claim and 1311's motion to amend their complaint. Accordingly, we award Compass their reasonable attorney fees relating to those issues. But Compass is not the prevailing party regarding the declaratory judgment claim, and is not entitled to attorney fees relating to that issue.[2]

CONCLUSION

We affirm the trial court's orders granting Compass's summary judgment motion regarding 1311's second floor office area claim and denying 1311's motion to amend their complaint. We reverse the trial court's order granting Compass's summary judgment motion regarding 1311's electric fence claim, and we remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
VELJACIC, A.C.J.

_____
PRICE, J.

---

[2] 1311 does not request attorney fees on appeal.